[Civ. No. 3810. Second Appellate District, Division Two.—June 19, 1923.]

## IMPERIAL WATER COMPANY No. 4 (a Corporation), Respondent, v. EDWIN A. MESERVE et al., Appellants.

[1] Pleading—Sufficiency of Cross-complaint.—A cross-complaint must allege not only all the facts necessary to constitute a cause of action, but also all facts essential to show that the demand is a proper subject for cross-complaint.

[2] Id. — Action for Water Sold — Cross-action Against Mutual Water Company.—Where plaintiff's cause of action as alleged in the complaint is one arising out of a contract to pay for water sold and delivered, a cross-complaint based upon an alleged right to receive water, not by reason of any contract made with plaintiff but in virtue of shares of stock in plaintiff (a mutual water company), fails to state a cause of cross-action.

[3] Id.—Improper Subject of Counterclaim—Conclusion of Law.— There being no facts averred in such cross-complaint showing that the alleged cause of cross-action arose out of the transaction set forth in the complaint as the foundation of plaintiff's claim, or that it was connected with the subject of the action, or that it arose upon contract, it could not be regarded as a proper subject of counterclaim under section 438 of the Code of Civil Procedure; and the assertion in such cross-complaint that it "is of and concerning the subject matter of plaintiff's complaint, and this cause of [cross] action arises out of the same transaction" was the allegation of a mere conclusion of law.

[4] Id.—Water Right as Real Property—Enforcement.—A water right in virtue of the ownership of stock in a mutual water company is real property; and an action based upon such a water right is not an action based upon contract but upon the ownership of real property, although such water right may have had its genesis in contract.

[5] Id.—Sale of Water—Liability of Defendants—Ultra Vires Act—Estoppel.—The evidence having been such as to warrant the trial court in finding that, as between plaintiff (a mutual water company) and the defendants, the water for which plaintiff was attempting to recover payment was furnished or "sold" to all the defendants jointly, and that they were jointly, or jointly and severally, liable therefor, the defendants were estopped from setting up as a defense that the act of plaintiff in "selling" the water to them was *ultra vires.*

62 Cal. App.—38

[6] Id.—Variance—Compliance With Articles of Incorporation.—
The evidence having shown that plaintiff, a mutual water com-
pany organized to distribute water to its members at cost, had
delivered the water to the defendants in virtue of the ownership
by one of them of capital stock in plaintiff, and that the water
was furnished to defendants at cost, the defendants were not
prejudiced by the fact that the complaint alleged a "sale" of the
water to defendants.

[7] Appeal—Improper Presentation of Points.—Points presented
upon appeal in a desultory manner and not argued or supported
by citation of authority will not be considered.

APPEAL from a judgment of the Superior Court of Im-
perial County. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edwin A. Meserve, *in pro. per.*, and Shirley E. Meserve
for Appellants.

A. L. Sebille and Bruce Sebille for Respondent.

FINLAYSON, P. J.—Plaintiff, a mutual water company
incorporated under the laws of this state, brings this action
against Lizzie H. Meserve and her two sons, Edwin A.
Meserve and Harry W. Meserve, to recover the sum of
$681.28 alleged to be due for "water sold and delivered"
to defendants. Judgment for that sum was rendered against
the three defendants, two of whom, Edwin A. and Harry
W. Meserve, have taken this appeal.

In a complaint consisting of three counts plaintiff al-
leges: In the first count, that defendants "purchased from
plaintiff" and the latter "sold and delivered to defend-
ants," for agricultural purposes, water to the amount and
value of $681.28, which defendants promised to pay; in
the second count, that the water was reasonably worth
$681.28; and in the third, that the defendants are "in-
debted" to plaintiff in the sum of $681.28 for water so
sold and delivered. Edwin A. Meserve and his mother
joined in an answer wherein they deny practically all of
the allegations of the complaint. Harry W. Meserve
answered separately. Like his codefendants, he also denied
substantially every allegation of the complaint. As a fur-

ther answer Harry W. Meserve alleged that the plaintiff is a mutual water company organized for the purpose of furnishing water at cost to its stockholders, and that it had no power under its articles of incorporation to "sell" water as personal property. For a further defense he alleges that, having the right so to do, he ordered water of plaintiff, but that the latter did not deliver all of the water so ordered because it negligently allowed its ditches to become so filled with weeds and grasses, silt and deposits that it was unable to deliver water in time to properly irrigate his crops; wherefore he alleges that his crops were lost and that he was damaged in the sum of $1,000. Harry W. Meserve also filed a cross-complaint wherein, for a first cause of cross-action, he alleged that plaintiff is a mutual water company organized to furnish water at cost to its stockholders and those claiming under them; that he rented of one C. R. Rockwood a tract of land containing 134 acres; that Rockwood owned 134 shares of plaintiff's capital stock; that as a lessee of Rockwood cross-complainant was entitled to receive water from plaintiff; that he planted barley on the leased land; that he ordered water of plaintiff, but that the latter permitted its canals to become so filled with weeds and grasses, silt and deposits that it could not and did not deliver water on the tract so leased by him of Rockwood; that as a result he lost the crop of barley and was damaged thereby in the sum of $2,000. The cross-complaint sets forth a second alleged cause of cross-action similar to the first, except that it is based upon plaintiff's alleged failure to deliver water to a different piece of land, namely, a tract containing 320 acres, of which cross-complainant alleged himself to be the lessee. There is nothing in the cross-complaint to show that either of the tracts of land alleged to have been leased by cross-complainant is the same as that for the irrigation of which plaintiff sold and delivered the water mentioned in its complaint; nor is there anything in the cross-complaint to show that the water right which was owned by either of cross-complainant's lessors was the same water right in virtue of which defendants ordered the water for which plaintiff is seeking a recovery here. To the cross-complaint so interposed by the defendant Harry W. Meserve plaintiff filed

a general and a special demurrer. The demurrer was sustained.

Upon the trial of the case the following facts were shown: The articles of incorporation filed by plaintiff, a mutual water company, declare that "the purposes for which it is formed are to secure a supply of water from [here follow the names of certain companies from which plaintiff procured its water] . . . to distribute the same at cost among its stockholders only for use upon lands owned by them." The water mentioned in plaintiff's complaint was furnished by plaintiff for the irrigation of part of a tract of 320 acres in Imperial County upon which A. R. Meserve, the father of appellants, had made a location under the United States land laws. A. R. Meserve died before the issuance of a patent but after he had made his final proof. Prior to the death of A. R. Meserve plaintiff had issued to him 320 shares of its capital stock. These shares represented a water right appurtenant to the particular tract of land upon which plaintiff furnished the water mentioned in its complaint. This tract of land, officially described as tract 156, will hereafter be referred to simply as the "ranch." Plaintiff having levied an assessment upon its subscribed stock and the amount assessed against the 320 shares standing in the name of A. R. Meserve not having been paid, the shares were sold for the assessment to A. R. Meserve's widow, the defendant Lizzie H. Meserve. She purchased the shares and became the owner thereof about January 4, 1913.

To make it possible for Edwin A. Meserve to supply his widowed mother with funds for her support under such circumstances that she would be led to believe the money came from the profits of the ranch instead of from her son's bounty, as well as to enable the mother to receive a patent to the ranch and have it issued to her in her name, the two sons, Edwin and Harry, with their mother's knowledge and consent, entered into an arrangement pursuant to which it was agreed to farm the ranch on shares, the mother and her two sons each to receive one-third of the profits. Referring to this arrangement, or, as he very appropriately designated it, this "family affair," Edwin A. Meserve, called as a witness for plaintiff, testified: "It was sort of a family affair and we we were trying to get

that property in shape and prevent anybody from going on it and protect it for our mother; that was the idea, and between us we were endeavoring to get some member of the family who would be a legal heir of A. R. Meserve into possession and on to possession of that property. . . . She [the mother] knew Harry was going there to take possession of it and she knew we were trying to get a patent in her name. . . . The children all wanted her to have it. The proposition was to get one of the Meserves, A. R. Meserve was in the possession, get the Land Office to issue a patent to Lizzie A. Meserve, and we finally succeeded in getting them to do it that way. . . . I was supporting my mother and it was the means of making it easier for her to come to accept my support. . . . All the time she believed that the money I was giving her for her support and taking care of her came from this ranch, but it didn't come from the ranch. On the contrary, the ranch was an expense, and I have carried on that ranch at an expense of a good many thousands of dollars. . . . She understood that Harry was going down there, and I think I told her that Harry would send up one-third of the gross returns of the ranch, and the money I was turning over to her represented that one-third. . . . She thinks that money she got comes from the one-third Harry produces, and he was doing his best to make it a go and I was doing my best to make it a go, and it went, but it went the wrong way. . . . It was sort of a family arrangement, Harry being willing to come here and sacrifice his time and try to make a go of it, and then he tried to run it so as to make the thing pay to my mother.''

On July 27, 1912, Edwin A. Meserve mailed to plaintiff a letter, duly signed by him addressed to plaintiff and reading as follows:

''Gentlemen: Mr. Harry W. Meserve, the tenant in possession of the 320 acres of land formerly belonging to my father, A. R. Meserve, but upon his death passing to my mother, is there now to represent both my mother, Lizzie H. Meserve, and myself. His lease on the 320 acres standing in father's name carried with it a lease of the water stock and of all the water rights and water privileges, so that he is authorized and empowered to call for the water on that water stock, and has full authority over

the 320 acres. He also has charge, as my agent and representative, of the 320 acres formerly in the possession of Mr. Ashton S. Cooke, and full authority to order water on my water stock. You are therefore directed to receive his orders with full authority on the water belonging to either one of the two places, or the stock appurtenant to either.''

Harry W. Meserve, who farmed the ranch during all the time that plaintiff furnished the water for which it is seeking a recovery, testified that, as between his brother Edwin and himself, he was to pay for the water and that Edwin was to pay the water assessments—by which we presume the witness meant such easements as plaintiff might levy on its subscribed capital stock.

Appellant's first point is that the court erred in sustaining the demurrer to the cross-complaint. We think the cross-complaint failed to state a cause of cross-action, and that, therefore, the general demurrer thereto was properly sustained. [1] A cross-complaint must allege not only all the facts necessary to constitute a cause of action, but also all facts essential to show that the demand is a proper subject for cross-complaint. [2] Here plaintiff's cause of action, as alleged in its complaint, is one arising out of contract—a contract, express or implied, to pay for water sold and delivered. To entitle a defendant to affirmative relief by way of cross-action his cross-complaint must allege facts showing that the relief sought by him relates to or depends upon the contract or transaction upon which plaintiff's action is brought, or that it affects the property to which plaintiff's action relates. (Code Civ. Proc., sec. 442.) Here the relief which cross-complainant seeks is based upon his alleged right to receive water, not by reason of any contract he ever made with plaintiff but in virtue of his lessors' shares of stock in a mutual water company—the plaintiff in this action. But such a right to water has been held to be real property. (*Stone* v. *Imperial Water Co.*, 173 Cal. 39 [159 Pac. 164].) Cross-complainant, therefore, is seeking to enforce a real property right and is not claiming damages for breach of any contract with plaintiff. It follows, therefore, that the relief sought by him does not relate to or depend upon ''the contract or transaction upon which the action is brought.'' Nor

does the cross-complaint allege any fact tending to show that the relief sought thereby affects the property to which the action relates, even if it were possible to regard plaintiff's action as one relating to real property. If the cause of action alleged by plaintiff, which, as we have said, is based on contract, may be deemed to have any direct relation to real property, i. e., to the particular tract of land for the irrigation of which plaintiff sold the water to defendants, still there is a total absence from the cross-complaint of any averment of fact tending to show that the two tracts of land mentioned therein and alleged to have been leased to Harry W. Meserve embrace any part of the land for which plaintiff furnished the water mentioned in its complaint. It follows, therefore, that the cross-complaint fails to allege any fact showing that cross-complainant's demand for damages is a proper subject of cross-action.

[3] Nor may cross-complainant's demand be regarded as a proper subject of counterclaim. It cannot be regarded as a proper subject of counterclaim under subdivision 1 of section 438 of the Code of Civil Procedure, for no *facts* are averred showing that the alleged cause of cross-action arose out of the transaction set forth in the complaint as the foundation of plaintiff's claim, or that it is connected with the subject of the action. True, the cross-complaint contains the bald assertion that it "is of and concerning the subject matter of plaintiff's complaint, and this cause of [cross] action arises out of the same transaction"; but this is the allegation of a mere conclusion of law and is not justified by any of the facts specifically averred in the cross-complaint. Nor is there any allegation in the cross-complaint which would make cross-complainant's demand a proper subject of counterclaim under subdivision 2 of section 438. Though plaintiff's cause of action arises upon contract, the alleged cause of cross-action, as we have shown, is based not upon contract but upon the ownership of real property—the water rights owned by cross-complainant's lessors in virtue of their ownership of shares of plaintiff's capital stock. [4] The ownership of each of such water rights, it is true, like the ownership of any other species of real property acquired through sale, doubtless had its genesis in contract; but cross-complainant is seek-

ing relief based upon the water right owned by each of
his lessors, which is real property, and is not seeking relief
based upon the contract out of which that water right
accrued. That contract was fully performed when the water
right vested in cross-complainant's lessor.

Since the cross-complaint clearly was subject to the general demurrer which plaintiff interposed to that pleading,
it is not necessary to consider appellant's technical criticisms respecting the sufficiency of plaintiff's special demurrer.

[5] Appellants earnestly urge that respondent, under
its articles of incorporation, had no right to "sell" water
—that it possessed only the right to distribute water among
its stockholders at cost, and that respondent's claim, according to the case stated in its complaint, is based upon
a "sale" of water to defendants and not upon a distribution
of water to its stockholders at cost. Appellants are not in
a position to make such defense. It sufficiently appears
from the testimony of Edwin A. Meserve and his letter
to plaintiff that he and his brother Harry and their mother
entered into a "family arrangement" whereby its was understood that the two sons should participate in farming the
land, each of them, with the mother, receiving one-third of
the crops—Edwin agreeing to contribute toward some of
the expense and Harry agreeing to contribute his services.
The latter admitted that, as between his brother and himself, he was to pay for the water used on the ranch. From
all the evidence in the case we think that the trial court
was warranted in finding that, as between the company and
the three defendants, the water must be held to have been
furnished or "sold" to all of the latter jointly, and that
the three were jointly, or jointly and severally, liable
therefor. Having thus dealt with the company, appellants
are estopped from setting up as a defense that the act
of the corporation in "selling" the water to them was
*ultra vires.* (*Bay City etc. Assn.* v. *Broad,* 136 Cal. 525
[69 Pac. 225].) [6] Moreover, though the complaint may
have alleged a "sale," the evidence shows that the water
was in fact delivered in virtue of the shares of stock owned
by the mother, and that it was furnished to defendants at
cost. Witnesses for respondent testified that the charges
which were made by plaintiff for the water which it fur-

nished from time to time to defendants were all at the rate of fifty cents per acre-foot; that this was the usual charge made against all stockholders who received water from the company and that the corporation received its water from other companies by paying therefor at the same rate— fifty cents per acre-foot. There is no fatal variance between this evidence and the case alleged in the complaint. It does not appear that defendants were deceived by the fact that the complaint, instead of averring that the water was furnished at cost in virtue of the mother's ownership of the shares of stock, alleged that the water was "sold and delivered." It is clear that a right result was reached, and under the provisions of section 475 of the Code of Civil Procedure and the requirements of the provisions of section 4½ of article VI of the constitution, no miscarriage of justice having resulted, the variance, if any, cannot be availed of to secure a reversal of the judgment.

Upon the occasions when plaintiff delivered water to the ranch measurements were made by its zanjeros, who filled out and filed with the company their "report sheets." These documents or memoranda give the name of the owner of the land, the dates when the water was ordered, the name of the person giving the order for the water, the amounts of water delivered and the sums charged. If from the aggregate of the sums shown as charges on these "report sheets" there be deducted, as credits, the payments which are disclosed by the company's books, there will be left a balance of $681.28, the amount for which plaintiff recovered judgment. One D. L. Smith, a witness for the plaintiff, testified that at one time he leased and farmed a part of the ranch. Wherefore appellants contend that some of the deliveries of water shown by the zanjeros' report sheets may have been used to irrigate that part of the ranch which Smith farmed, and that if this were the case the balance, if any, which might be due to plaintiff would be a sum less than $681.28. There is no merit in the claim. Smith testified that he farmed the land in 1912, and that from and including 1913 to the fall of 1916 he did not farm any part of the ranch. The "report sheets" show that the deliveries referred to therein were made from and including February 13, 1913, to and including September

21, 1915. Between these two dates Smith was not farming any part of the ranch.

[7] The remaining points raised in appellants' brief are either destitute of any merit whatever or are instances of harmless error, or are points presented in such a desultory manner that we do not feel called upon to consider them. The following is a fair sample of the manner in which many of appellants' points, if "points" they may be called, have been presented to us. "H. W. Meserve was called for plaintiff. The first questions propounded to this witness involved in Errors No. 1, No. 2 and No. 3 [Tr. fols. 77 to 81], speak for themselves, and we submit need no other argument to show their error than the argument presented in the very statement of the objections. Certainly it was not competent, particularly as against Edwin A. and Lizzie H. Meserve, to prove that the defendant was a corporation in the manner attempted and to thus prove the power of the corporation. To argue these objections would be but to quote what is stated in the transcript and to reprint the same." Again: "We submit that the objections embodied in errors No. 4, No. 5 and No. 6 [Tr. fols. 81 and 84]; speak for themselves." The purpose of a brief is to enlighten the court. This can best be accomplished when each point is separately stated under an appropriate heading, thus showing the precise nature of the question of law intended to be presented. The method of presentation pursued here by appellants is not calculated to aid the court. Take, for example, that part of their brief from which we have just quoted, wherein we are told that the first questions propounded to Harry W. Meserve involved errors 1, 2, and 3. By these questions the witness was asked if he knew of an organization known as Imperial Water Company No. 4, if he was not a director of that institution and what was the character of its business. The questions were objected to upon the ground that this was not the way to prove a corporation. The objections were overruled. But later in the trial, as our own independent search of the record reveals, plaintiff put in evidence the articles of incorporation and thus cured the "error" complained of in the questions to which counsel make reference when they refer us to the so-called "Errors No. 1, No. 2 and No. 3." If, instead of making a general reference to a particular

part of the record and asking us to find there the argument made by defendants' counsel at a certain stage of the trial, counsel for appellants had stated separately, under appropriate headings, the several points upon which they rely for a reversal, they doubtless would not have claimed that the court committed prejudicial error in overruling their objections to these questions. Had they so presented their points they probably would not have overlooked the neutralizing effect of the subsequent introduction of plaintiff's articles of incorporation. We should not be expected to do the work of counsel and assiduously hunt up and consider what counsel have not argued or supported with the citation of authorities. Speaking of a presentation of points made in a manner similar to that adopted by appellants here; this court, in *People* v. *Carate,* 54 Cal. App. 372 [201 Pac. 955], expressed itself as follows: "Not only, in each instance, does counsel fail to state the question to which objection is made, or the objection itself, but none of the points is argued and no authority is cited in support of any of them. Such casual presentation of points, if followed up, would impose upon us a labor which is within the peculiar province of counsel, and which does not come within the range of our duty. We are not called upon to consider points so presented."

The judgment is affirmed.

Works, J., and Craig, J., concurred.