[L. A. No. 10828.  In Bank.—April 17, 1930.]

W. R. WHEAT et al., Respondents, v. JOSEFA B. THOMAS, Appellant.

Constan Jensen for Appellant.

Barker & Keithly for Respondents.

PRESTON, J.—The judgment for plaintiffs is affirmed. Defendant Thomas seeks by this appeal to avoid the decree which requires her to specifically perform a certain written contract whereby plaintiffs agreed to purchase and she agreed to sell certain real property comprising a part of the Rancho East Laguna, situate in Los Angeles County, California. Her objections to the decree are numerous, varied, interwoven and supported mainly by undeveloped argument; hence we find it impracticable to discuss all of the matters

urged, but we have examined the record thoroughly and find evidence, convincing and abundant, in support of the findings and judgment and also find the numerous contentions made by appellant to be untenable.

The facts, as gleaned from the evidence, particularly that evidence which directly supports the findings, are in substance as follows: Upon the death of one Arcadia B. De Baker in 1913, appellant, one of her heirs, succeeded to an undivided interest in the above-mentioned tract, consisting of some 755 acres known as Rancho East Laguna. The De Baker estate was administered by the Title Insurance and Trust Company, with which company Mr. J. H. Coverley was connected in one capacity or another for a period next prior to 1923 of about twenty years, being vice-president and trust officer thereof in December, 1921, at which time, as appellant's attorney-in-fact, he executed the agreement here sued upon. As such trust officer, Mr. Coverley had charge of said De Baker estate and general control of said tract of land. It was in this official capacity also that he became acquainted with appellant about the year 1915, at which time she was desirous of having the title company look after her affairs and effected an arrangement with it to that end. The company made several sales for her account of land held for subdivision, loaned money to her and otherwise handled part of her business, including her interest in said estate, and Mr. Coverley personally represented her in the partition action instituted by some of the De Baker heirs through which she was eventually awarded the property here involved.

Appellant took frequent trips abroad. During her absences Mr. Coverley was entrusted with the handling of her affairs. On three different occasions she gave him powers of attorney, under the last of which the transaction before us was consummated. Said power of attorney, bearing date May 2, 1921, was prepared by another trusted officer of the title company; it gave Mr. Coverley full power of disposition, with two exceptions, over lands and tenements owned by or in which appellant had an interest and full power to act for her in a transaction of the character of that before us. It was duly executed by appellant, certified by a notary, delivered to Mr. Coverley and thereafter recorded.

Mr. Coverley testified that he would have preferred that it run to the title company, but that appellant expressly desired that it be in his name because she wanted him to know everything that was done for her. He further testified that he had instructions from her and the power of attorney was drawn for the particular purpose of selling everything that she had, aside from the two excepted parcels, if he could get what in his opinion was her adequate price for it.

Appellant left for Europe shortly after the execution of said document. About a month previous to her departure an interlocutory decree had been entered in said partition action, fixing her undivided interest in said tract at .04998008 thereof, but no specific land had been allotted to her. She had requested Mr. Coverley to obtain a large parcel of cheap land rather than a smaller parcel of higher priced land and he so informed the referees, with the result that on November 12, 1921, about a month prior to execution of the agreement in suit, the referees appointed to partition the property, filed their report, recommending that such a parcel be awarded to her, describing it. On November 29, 1921, about a week prior to the execution of said agreement, their report, as modified, was confirmed by the court. The final decree in partition, however, was not filed and entered until January, 1922.

A short time prior to December 6, 1921, plaintiffs, upon recommendation of a third party, called on Mr. Coverley, who had never seen them before, for information relative to land in that vicinity, having in mind the purchase of any property available at a fair price. In the course of their conversation Mr. Coverley described the land under partition to them. They were immediately interested and after several subsequent meetings they agreed to purchase the parcel thereof to be awarded to appellant.

On December 6, 1921, therefore, said agreement, the basis of this action, was duly executed by Mr. Coverley as attorney-in-fact for appellant and by plaintiffs as buyers, appellant thereby agreeing to sell to plaintiffs the real property therein described situate in the Rancho Laguna "together with all . . . water rights now or hereafter existing in . . . connection with said property . . . including the

rights to water through ownership in or other relationship with any water company now or hereafter supplying, or formed to supply water to lands of which this property, or any part thereof, is a part." The purchase price was to be $21,250, $500 thereof being payable in cash, $4,812.50 at the time of delivery of the deed and the balance of $15,937.50 "by first mortgage upon said property, executed by the Buyers, and their wives (if married) . . . due three years after date of the delivery of said deed," etc. Said agreement further provided that all parties understood that the property was in litigation in said partition action, that no decree had been entered therein awarding it to the seller, but that such a decree was expected and contemplated; that, however, if by March 6, 1922, legal title had not vested in the seller, the buyers could elect either to demand the return of all their money or take, without warranties of any kind, whatever title the seller then had. This agreement was prepared by one of the attorneys for the title company and signed by plaintiffs without submission to their own attorney. They were financially able to make the payments required thereunder and left with Mr. Coverley as earnest-money their check for $500. The matter then went into escrow and from time to time they paid in further amounts to be credited on the $4,812.50 payment, although it was not due until delivery to them of the deed.

Testimony offered respecting the value of the property was conflicting; however, that the above purchase price represented the fair market value thereof was confirmed by a number of witnesses and the evidence fully supports the findings of the court in this behalf as well as its finding as to the rental value thereof.

The final decree filed in the partition action in January, 1922, awarded said parcel to appellant, provided for payment of costs, and also awarded her a .072459 interest in the water and water rights created by the setting apart of a certain acreage for the development of water for the benefit of all the other property in said tract.

About this time appellant returned from Europe and learned of the sale, which met with her decided disapproval, and she so informed Mr. Coverley. He assured her that he had acted in good faith and to the best of his

ability. He also informed her that the sale had been consummated and it was too late to withdraw. Thereafter, however, and on January 20, 1922, she revoked the power of attorney given to him, notified the title company that she repudiated the sale, and a few days later notified plaintiffs that she disaffirmed and rescinded said contract. On January 21, 1922, she commenced an action against Mr. Coverley, the title company, these plaintiffs and certain fictitious defendants, to rescind said sale, praying that the transaction be adjudged invalid. In said action the court immediately issued a temporary order restraining defendants from proceeding with the matter and on January 22d it issued an injunction *pendente lite* against the title company and Mr. Coverley for the same purpose. Demurrer and answer were thereafter filed therein, together with a cross-complaint by these plaintiffs, asserting their rights under said contract and praying for its enforcement, and they later, on October 10, 1922, made and served on appellant's attorney a written offer of performance thereof. Notices and proceedings were had from time to time in said action. Appellant, however, opposed all efforts of the cross-complainants, plaintiffs here, to have it set for trial and finally, in August, 1923, she dismissed it.

In the month of October following, plaintiffs made to appellant another tender of performance, and on November 29, 1923, they instituted this action, praying that said contract be specifically enforced and that appellant be required to execute to them, upon their full performance, a good and sufficient deed to said property. Appellant, aside from her other contentions, claimed that by reason of a discovery of oil in the vicinity just prior to the time of the sale, land values increased rapidly and surrounding property was leased for oil development purposes; that the purchase by plaintiffs was purely a speculation in oil lands; that the land awarded her was worth many thousands of dollars more than they contracted to pay for it and, if required to carry out said agreement, made without her knowledge, she would sustain a great and irreparable monetary loss and would be defrauded of a valuable estate.

The court found that practically all of the allegations of the amended complaint were true, except that the rental value of appellant's property, at time of purchase, was $1500 per annum instead of the larger sum alleged in said pleading; that at said time the value of said land was not $200,000 nor was it more than the sum of $21,000; nor was said purchase price grossly or at all disproportionate to the value of the land. It further found that there were no water rights or rights to water in connection with said land at the time of making said contract of sale or thereafter derived through ownership in or relationship with any water company or association. Following these findings, judgment was rendered for plaintiffs, decreeing that appellant be required to perform fully said agreement of sale. Thereafter she prosecuted this appeal.

Appellant claims that enforcement of the contract against her will be unjust, unreasonable and inequitable; that it must fail for lack of mutuality in that its provisions are uncertain and unenforceable because it bound her to convey future unknown water rights; the title to be conveyed was contingent upon the entry of a final judgment in a partition action, which entry she could not compel; the consideration must partially fail as respondents' wives, not being parties to the contract, could not be compelled to execute said required mortgage; the contract was a mere option, and plaintiffs had an adequate remedy at law.

Appellant also makes minor contentions with respect to defects in the pleadings and errors in rulings on the evidence, all of which, upon examination, we find to be without merit and unworthy of discussion.  We likewise find no merit in the claim that the enforcement of this contract will work an injustice against appellant in view of the holding above announced with respect to the sufficiency of the evidence to sustain the findings of the court with respect to the sale and rental values of said land at the date of sale. There is also competent evidence to the effect that at that time the land had no monetary value for oil development purposes. A then reasonable purchase price having been named in the agreement of sale, any later increase in land values would not, of course, render enforcement of said contract inequitable.

■ Neither is there merit in the claim that respondents were guilty of laches. The evidence shows, as is apparent from the above statement of facts, that they made a continuous effort to effect a consummation of the sale. From January, 1922, until dismissal in August, 1923, they were active in defending themselves against the dilatory tactics practiced by appellant in her own action, and in endeavoring to have their rights adjudicated through the issues raised by their cross-complaint therein. Within two months after said dismissal they made another tender to appellant and during the third month thereafter they instituted this action. Blame for any undue delay may therefore be laid at the doorstep of appellant.

■ The test of mutuality in an action of this character is defined by section 3386 of the Civil Code, which provides: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance." In other words, the test here is mutuality of remedy—whether the agreement is such that at the suit of either party a court of equity would decree specific performance against the other. (See 23 Cal. Jur., p. 447, sec. 20 et seq.) See, also, *Thurber* v. *Meves,* 119 Cal. 35 [50 Pac. 1063, 51 Pac. 536], holding that while it is a general rule that mutuality of remedy is essential to authorize the specific performance of a contract, this rule does not require that such mutuality shall exist in all cases at the inception of the transaction.

■ Bearing in mind the above doctrine, we find no lack of mutuality and no uncertainty in said contract— and particularly we find no such lack by reason of the above-quoted provision thereof which, appellant claims, binds her to convey future unknown water rights. In this behalf appellant contends that respondents' claim that said clause contemplates only water rights appurtenant to and running with the land cannot avail them as under the partition decree water rights in connection with the land were especially created by the award to her of said undivided interest in four water-bearing and reservoir lots.

■ She further claims that the action of the trial court

was inconsistent in finding that there were no water rights of any kind in connection with the land, and yet decreeing, as a conclusion of law, that respondents were entitled to a deed from her "conveying all of the property the subject of said contract" and ordering her to convey the land, "together with all water rights, if any, existing in connection with said property or any part thereof."

It would seem that by the insertion of said clause there was in the contemplation of the parties only the giving of those rights which, at the time of performance of the contract, were appurtenant to and running with the land and would, without special mention, have passed by the deed anyway by implication of law. This is apparent from the testimony of Mr. Coverley that at the time of the sale articles of incorporation for a mutual water company to serve the tract were in the course of preparation and the value of rights of way for water and other purposes was considered at the time the purchase price was fixed.

█ The right of a stockholder in a mutual water company to receive water by virtue of his ownership of stock is real property, but the shares themselves are personalty and do not pass upon a conveyance of land unless they are appurtenant thereto; they may become appurtenant by the adoption of appropriate provisions in the by-laws of the water company under section 324 of the Civil Code, but one claiming that they are appurtenant, is required to prove it. (See 26 Cal. Jur. 449 et seq., and cases in note; also *Imperial Water Co.* v. *Meserve,* 62 Cal. App. 593 [217 Pac. 548], and *Palo Verde etc. Co.* v. *Edwards,* 82 Cal. App. 52 [254 Pac. 922].)

In this case no proof was offered and no claim made that the water stock of said company was appurtenant to the land or that the passing of ownership thereof was contemplated by the contract. In fact, the court specifically found that there were no water rights of any kind in connection with the land; hence, as both contract and decree require appellant to convey only such water rights "if any," and the court found there were none, it is clear that the language complained of became mere surplusage and only such rights will pass to plaintiffs as, running with the land, would pass in any event by implication of law.

█ It is likewise immaterial whether appellant could

have compelled a decree in said partition suit as title was vested in her when performance was sought. "It is a settled rule in this state that the vendor need not have even an inchoate title at the time of the contract; that he may sell land to which he has no title, and the contract will be valid and enforceable if, when the time for performance arrives, he is able to furnish the title he contracted to convey." (*Anderson* v. *Willson*, 48 Cal. App. 289, 294 [191 Pac. 1016, 1019]; see, also, *Backman* v. *Park*, 157 Cal. 607 [137 Am. St. Rep. 153, 108 Pac. 686]; *Lemle* v. *Barry*, 181 Cal. 6, 9 [183 Pac. 148]; *Estate of Fulmer*, 203 Cal. 693, 701 [58 A. L. R. 430, 265 Pac. 920].)

▄ Appellant complains of that clause of said agreement which provides that the deferred portion of the purchase price shall be secured by first mortgage upon said property "executed by the buyers, and their wives (if married). . . . " It is her contention that inasmuch as the wives were not parties to the agreement and could not have been compelled to execute such a mortgage, the agreement is by said provision rendered unenforceable under section 3390, subdivision 5, of the Civil Code, which provides: "The following obligations cannot be specifically enforced . . . 5. An agreement to procure the act or consent of the wife of the contracting party. . . . "

It is true that said provision was itself unenforceable, but it did not thereby render the contract void (*Armstrong* v. *Sacramento etc. Co.*, 52 Cal. App. 110, 115 [198 Pac. 217]). In other words, the contract, aside from said provision, was valid and binding and the provision was not a vital portion thereof. It did not render the contract unenforceable, but became immaterial because the decree entered does not require the giving of a mortgage. The mortgage contemplated by the contract would have been due three years after delivery of the deed by appellant; that time having elapsed, the decree removed the formality of a mortgage and provided for payment of the full purchase price in cash. Appellant should not complain of the clause, therefore, as it cannot prejudice her rights in any respect.

▄ The terms of the document are a complete answer to appellant's contention that it was a mere option depending upon the sufficiency of the showing of title. From the language thereof it is clear that the agreement was intended

to be and was in fact a binding contract of purchase and sale. The sale was thereby made subject to the contingency that if legal title did not vest in the seller by a stated date, the buyers should have a certain option with respect to the purchase, but title vested in the seller long before that date and, therefore, as the contingency never arose, the provisions relating to it, which might be termed a collateral option, failed and became ineffective. Far from being prejudicial, said contingency was evidently inserted for appellant's own protection, to relieve her from any possible liability for damages in case the partition decree should not be entered in the manner anticipated.

Lastly, we believe that specific performance of said contract was the only adequate remedy available to plaintiffs. Section 3387 of the Civil Code announces the rule in this behalf—that "it is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation . . . '' This presumption is not overcome by the claim that plaintiffs, being mere oil speculators, had no real desire for any particular parcel; thus pecuniary compensation would afford them an adequate remedy. The evidence shows that respondents, having looked over land in the vicinity, desired, whatever their purpose, to secure this special property and so contracted in writing to purchase it rather than other available portions of the tract. The situation is not altered because by a provision in said contract they undertook to protect themselves against a possible shifting of the allotments of land recommended by said referees in the partition proceeding. To put it another way, the trial court, under persuasive evidence, expressly or impliedly found that specific performance was the remedy to which respondents were entitled, and such finding is conclusive.

The decree entered by the court also takes care of respondents' obligation to appellant for payment of taxes and in other respects equitably adjudicates her rights; hence our conclusion that it must be affirmed.

Shenk, J., Richards, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.