[Civ. No. 2227.   Third Appellate District.—March 28, 1921.]

W. S. ARMSTRONG, Respondent, v. SACRAMENTO VALLEY REALTY CO. (a Corporation), et al., Appellants.

[1] SPECIFIC PERFORMANCE—JUSTNESS OF AGREEMENT—CONSIDERATION —SUFFICIENCY OF COMPLAINT.—In this action to compel the specific performance of a contract, the complaint was sufficient, it having contained a direct averment or statement that the defendants received an adequate consideration for their undertaking and contained in its many allegations an affirmative showing that the defendants, and each of them, received an adequate consideration and that as to them the agreement was just.

[2] ID.—CONTRACT FOR CONVEYANCE OF LAND—PROCUREMENT OF SIGNATURE OF WIFE—VALIDITY OF AGREEMENT.—An agreement pro-

viding, among other things, for the conveyance of land is not void because one of the parties therein contracts that he will procure the consent of his wife to the execution of certain conveyances therein provided to be made, although it might be an agreement that cannot be specifically enforced.

[3] ID.—WANT OF OWNERSHIP OF LAND—PRESUMPTION—LIABILITY FOR BREACH.—It is not unlawful for a party to agree to convey lands which at the time of contract are owned by another, but in such case it is presumed that the contracting party is advised that he can at the proper moment procure the title or procure the holder thereof to make or join in the proper conveyance; and he is none the less answerable for his breach, even though he may have placed himself in a position where he cannot comply with the terms of his contract.

[4] ID.—ABILITY TO PARTIALLY PERFORM—RIGHT TO COMPEL.—In an action to compel specific performance of a contract providing, among other things, for the conveyance of land, if the defendants do not own a portion of the property in question and, therefore, cannot convey the same, the plaintiff is entitled to specific performance as to such portion of the property as may stand in the names of the defendants or any of them.

[5] ID. — ARBITRATION — FILLING OF VACANCIES — INTERPRETATION OF AGREEMENT.—An agreement for the appointment of three arbitrators by selecting three names from lists of fifteen names each prepared by the parties necessarily implies the names of persons who would be willing to act; and where such agreement makes no specific provision for the selection of an alternate in place of any appraiser refusing to act, but does provide a method for filling other vacancies, to wit, by resort to additional lists prepared as were the original lists, a reasonable interpretation of the agreement requires that vacancies caused by the refusal of an appraiser to act be filled by that method.

[6] ID.—INCOMPLETE AGREEMENT—EQUITY.—Where, owing to the incompleteness of an agreement, no method of carrying it into effect is provided, equity can adopt the method most in harmony with the covenants of the parties.

[7] ID.—PURPOSE OF ARBITRATION—VALUATION OF LAND — EQUITY — JUDGMENT.—The selection of arbitrators having been for the purpose of fixing the value of certain land, and the defendants having refused to join in the selection of a third appraiser to fill the vacancy of the appraiser who refused to act, the trial court, sitting as a court of equity, was justified in taking the matter in hand and itself fix the values and afford the defendants an opportunity to complete the transaction upon the values thus fixed; and in case the defendants should fail to do so, the court could grant, as an alternative, a judgment for monetary relief.

[8] ID.—INTEREST ON MONETARY JUDGMENT.—In such action, as a part of such alternative judgment, the plaintiff was properly allowed interest on the sum found due from the date of the breach of the agreement by the defendants.

APPEAL from a judgment of the Superior Court of Glenn County. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

Claude F. Purkitt, W. T. Belieu and Courtney L. Moore for Appellants.

Frank Freeman and George Freeman for Respondent.

PREWETT, P. J., *pro tem.*—This is an appeal from a judgment in favor of the plaintiff and respondent and against the appellants in an action brought against them to enforce the terms of a contract dated on April 27, 1917. Though the record in the case is somewhat voluminous, the actual matters in dispute may be brought down to a very narrow compass.

On December 6, 1910, the respondent and other persons owned 1,251 shares of the capital stock of Armstrong-Quatman Co., a corporation, and the appellant Mrs. Quatman owned the remaining 1,249 shares. On said day said corporation entered into a contract with the appellant Sacramento Valley Realty Co., a corporation, whereby Armstrong-Quatman Co. sold to the latter corporation certain tracts of land situated in the counties of Glenn and Colusa for the agreed price of $25,000, payable in small installments.

The appellants C. L. Donohoe, A. H. Quatman, and H. J. Barceloux were stockholders in the Sacramento Valley Realty Co., and they made themselves parties to said contract of December 6, 1910. Divers differences having arisen among the parties, the respondent commenced an action against the parties to the contract. In this action Mrs. Quatman became an intervener, asserting by way of intervention that she had an interest in the proceeds of the sale as owner of 1,249 shares of stock. Judgment went against all the defendants therein and the intervener and they all appealed the case to the supreme court. The action of that tribunal is reported in 179 Cal. 648, [178 Pac. 516].

1. While that appeal was pending the parties got together on the terms of a proposed compromise. These terms were embodied in a lengthy agreement dated April 27, 1917, which agreement constitutes the foundation of the present action. It will be seen that Mrs. Quatman, claiming, as she did, practically one-half the proceeds of sale to arise from the earlier contract, was vitally interested in the outcome of the compromise agreement. This compromise agreement provided substantially that the various suits pending between the parties, some twenty in all, should be dismissed; that the appellants herein should pay to the respondent the sum of $5,000 in cash and a further sum of $12,796.01 in lands at a certain value to be ascertained by means of an appraisement. It is out of the provisions for this appraisement that most of the points on this appeal arise. The agreement provides that each side should select fifteen names of proposed appraisers, placing the names in sealed envelopes and that if three names were found to be common to both lists, these three should be the appraisers. No specific provision was inserted in the agreement for the selection of an alternate in case one of the three should refuse to act, although it was provided that if three names were not found to be common, then additional lists of fifteen names should be prepared until the requisite number was thus obtained. Three names were found to be common to both lists, but one of the three appraisers refused to act. The agreement provides that such additional lists should be prepared on two days' notice in writing, and no such written notice was given. However, the stakeholder went to the representative of the appellants and demanded the selection of additional lists, but the appellants declined to submit them on the ground or claim that the agreement made no provision for additional lists in such case. This amounted to a waiver of a written notice, since such claim demonstrated that a more formal notice would have been unavailing. The respondent promptly prepared his additional list. The appellants contended and on this appeal contend that the omission of the agreement to make specific provision for supplying the place of an appraiser who refused to act rendered the entire agreement incapable of performance and consequently null and void. No claim was made by any of the appellants prior to the commencement of this suit, so far as the record

52 Cal. App.—8

informs us, that the agreement was inequitable, unjust, or unconscionable, nor that the money agreed to be paid was not justly due. It is a case where the litigants withhold both the land and the money and refuse to submit a list of appraisers on the plea that it is not so nominated in the agreement.

[1] All the appellants make the point that the complaint does not show that they received adequate consideration for their undertaking and that as to them it is equitable and just. While the appellants devote much space in their briefs to this point, it is sufficient to say that the complaint contains a direct statement or averment that they did receive an adequate consideration, and, moreover, contains in its many allegations an affirmative showing that the appellants and each of them received an adequate consideration and that as to them the agreement is just. No more is required. No more could be stated.

The appellant Letitia Beretta Quatman makes the further point that, while the complaint may show that the agreement is equitable and just and founded on an adequate consideration as to the other appellants, yet as to her it fails to do so. But she was a party to this litigation—the very controversy that resulted in the compromise agreement. She had intervened in the principal suit and had appealed from an adverse judgment therein. The compromise of the litigation in which she had so vital an interest was not only a valuable but an adequate consideration for her obligation, and it matters not whether her obligation was primarily her own or was entered into in behalf of some of her co-obligors. In this view of the matter, the complaint shows that the consideration for her obligation was adequate. It does not seem to be seriously disputed that such consideration may be sufficiently shown by the general allegations of the complaint; but any doubt on the subject is fully settled by the following extract from a late opinion: "It is not necessary, however, that the complaint for specific enforcement should declare, in the very words of the code, that there was an adequate consideration for the contract and that it was just and reasonable. . . . The proper mode of pleading is to set forth the facts from which the court may conclude that the contract is supported by an adequate consideration and is,

as to the defendant, fair and just." (*Magee* v. *Magee,* 174 Cal. 276, [162 Pac. 1023].)

[2] 2. The appellants insist that the agreement is void for the reason that C. L. Donohoe contracts therein that he will procure the consent of his wife to the execution of certain conveyances therein provided to be made. But, first, such a provision does not render a contract void, although it might be a contract that could not be specifically enforced (sec. 3390, Civ. Code), and, secondly, in this case the appellant Donohoe has entered into no such stipulation. There is a provision in the agreement that a conveyance from her would be sufficient. [3] It is in no way unlawful for a party to agree to convey lands which at the time of contract are owned by another. In such case it is presumed that the contracting party is advised that he can at the proper moment procure the title or procure the holder thereof to make or join in the proper conveyance; but in any view that is his own affair. He is none the less answerable for his breach, even though he may have placed himself in a position where he cannot comply with the terms of his contract. This principle is a complete answer to the claim of appellants that the respondent cannot maintain this action because he knew at the time of contract that the appellants did not own the property involved. However, it is not shown that he knew this, although it is shown that at least a portion of the legal title stood in the names of others. [4] But respondent was nevertheless entitled, in any event, to specific performance as to such portion of the property as may have stood in the names of appellants or any of them. (*Farnum* v. *Clark,* 148 Cal. 610, [84 Pac. 166].)

3. Complaint is made that the court found without sufficient evidence that Frank Freeman had executed a certain quitclaim deed, but neither party is complaining that this deed was not executed, neither party assigns this as a breach and neither party is injured by the finding. The delivery of such a deed was preliminary to the payment of the first or initial check, of $5,000, and neither party complains that this check was not delivered, nor does either party set out its delivery or nondelivery in their pleadings as a breach. The whole matter is unimportant.

4. Other points urged, save one, are unimportant and they require no special attention. **[5]** This one excepted point is the failure of the agreement to provide a method of selecting an alternate in place of an appraiser refusing to act. The appellants boldly insist that this condition blocks the enforcement of the agreement, although they make no pretense of controverting the justice of the respondent's claim to the land or money. The agreement to select three names from the lists of fifteen necessarily implied the names of persons who would be willing to act. This is not a violent nor an unreasonable interpretation of the agreement. It is fundamental that a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contract (sec. 1636, Civ. Code). It must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if this can be done without violating the intention of the parties, as such intenion existed at the time of contract (sec. 1643, Civ. Code). Stipulations which are necessary to make a contract reasonable are implied (sec. 1655, Civ. Code). In the light of these obvious principles of interpretation, no embarrassment is encountered in holding that a vacancy arising from the refusal of an appraiser to act should be filled in the manner provided in the contract for filling other vacancies, to wit, by resort to additional lists of fifteen names submitted by each side. If this is a correct view, then the appellants committed a breach of the agreement when they refused upon request to submit additional lists. **[6]** If this view is open to question, then we have a condition where, owing to the incompleteness of the agreement, no method of carrying it into effect is provided, and equity can adopt the method most in harmony with the covenants of the parties. In either view, the court was authorized to entertain the action and to render equitable relief.

The selection of the appraisers was merely a means to an end and is not of itself a vital part of the agreement. It was no more than a method of selecting unbiased appraisers. The court is an unbiased appraiser, and under the authorities is competent to appraise the land. As said by the supreme court of Washington in the case of *Cogswell v. Cogswell,* 70 Wash. 178, [126 Pac. 431]: "The matter in

suit having been settled by the solemnly executed contract of the parties, that contract having been partly performed on both sides, the failure to arbitrate relating only to a nonessential incident, not giving ground for a rescission, it follows that the appellants have mistaken their remedy. They should have applied to the court for the enforcement of the contract by fixing the price of the land."

And quoting from another case: "In such a case the courts hold that the matter of determining the price is matter of form rather than of substance; and if it becomes evident that it cannot be determined in the manner provided for in the contract, by reason of the refusal of one party to do what in equity he ought to do, the court will determine it on application of the other." (*Town of Bristol* v. *Bristol Waterworks*, 19 R. I. 413, [32 L. R. A. 740, 34 Atl. 359].)

To substantially the same effect are *Cooke* v. *Miller*, 25 R. I. 92, [1 Ann. Cas. 30, 54 Atl. 927], and *Grosvenor* v. *Flint*, 20 R. I. 21, [37 Atl. 304]. In *Parsons* v. *Ambos*, 121 Ga. 98, [48 S. E. 696], the umpire died and the court itself determined the values. The court said: "So, too, in contracts of sale, the parties may stipulate . . . that the value of the property shall be ascertained by appraisers before either has the right to sue. This fixing of values, however, is a mere incident and not of the substance of the contract. It rather serves the office of evidence, than of a finding which construes the contract or determines rights."

[7] We entertain no doubt that the refusal of the appellants to join in the selection of a third appraiser justifies the trial court, sitting as a court of equity, to take the matter in hand and itself fix the values and afford the appellants an opportunity to complete the transaction upon the values thus fixed. Upon their failure so to do, it is well settled that the court could grant, as an alternative, a judgment for monetary relief. Our supreme court says: "And finally, it is indisputable that where, through no fault of the plaintiff in equity, specific performance cannot be decreed, the court, having obtained jurisdiction of the subject matter properly within its cognizance, will grant, as an alternative, monetary relief, which, in an action strictly at law, would be by way of damages." (*Messer* v. *Hibernia Sav. & Loan Soc.*, 149 Cal. 122, [84 Pac. 835].)

[8] 5. The court allowed the respondent interest on the sum found due, or rather on the sum admitted to be due, from July 1, 1917. At or about this date the appellants committed a breach of the agreement by refusing further to perform and by declaring to the respondent that further performance was impossible. From that date, the respondent was entitled to interest.

6. The court extended to the appellants an opportunity to convey, of which opportunity they declined to avail themselves. The court thereupon afforded relief by way of a money judgment for the sum provided in the agreement to be paid. This method of procedure is open to no objection, and is in harmony with the usual practice.

We find no error in the record and the judgment is accordingly affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 26, 1921.

All the Justices concurred.