[Civ. No. 6225. First Appellate District, Division One.—February 21, 1928.]

EARL D. MINTON, Respondent, v. W. D. MITCHELL et al., Appellants.

William P. Hubbard, George Cosgrave and David Cosgrave for Appellants.

Sapiro & Hayes for Respondent.

PARKER, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff and against defendants. The case was tried by the court without a jury. Defendants' motion for a new trial was denied.

The facts follow: J. Ed. Mitchell during his lifetime had entered into a contract of purchase wherein he agreed to buy from Marin Lumber and Supply Co. a certain tract of land known as Duncans Mill property in Sonoma County, consisting of about 3,500 acres of timber land, sawmill, store, cottages, and personal property used in connection therewith. Upon the death of J. Ed. Mitchell the defendants W. D. Mitchell and Sallie A. Mitchell, being the sole heirs of J. Ed. Mitchell, succeeded to and took over the rights of decedent in and to the contract and entered into possession of the property. W. D. Mitchell and Sallie A. Mitchell will be hereinafter referred to as the defendants. Thereafter, on February 19, 1920, defendants entered into a contract with Earl D. Minton, plaintiff, under which they agreed to sell, assign and transfer their contract of sale and purchase to plaintiff, assuming the liability of payments due Marin Lumber Co. and also paying a certain price to defendants. This arrangement was with permission of Marin Lumber Co., original vendor. Accordingly, delivery of the premises and personal property was made to plaintiff.

A few months thereafter plaintiff desired to withdraw from the transaction and turn the property back to defendants. On June 1, 1920, the parties entered into an agreement which purported to be an agreement between plaintiff and defendants but which was actually signed by plaintiff and defendant W. D. Mitchell. The defendant Sallie A. Mitchell did not sign this agreement. This agreement was substantially as follows: It first recited the contract of sale existing between the parties, and that it was the mutual desire of said parties to give up said contract and deliver possession of the properties involved to the defendants. The defendants release plaintiff from all obligations to be thereafter performed under his contract of purchase, and plaintiff relinquishes to defendants all rights held, owned or possessed by him by virtue of the contract of purchase, together with

the personal property connected therewith, and specifically relinquishes the right to the possession of the real properties referred to in the contract, the operation of the sawmill by plaintiff to cease June 2, 1920, allowing plaintiff to ship such lumber as was then loaded on the cars. The parties by the same agreement and included therein agree that two arbitrators, one to be selected by defendants and one by plaintiff, shall be appointed to fix the accounts of the parties for the purpose of determining by said arbitrators the sum of money, if any, to be repaid to plaintiff by defendants, it being agreed that the said sum of money, if any, shall be paid plaintiff in four equal installments. If the arbitrators thus selected are unable to agree upon the amounts to be repaid plaintiff then a third arbitrator shall be appointed by the first two, and the three shall determine the amount due plaintiff. The said arbitrators shall have like authority to determine the amount of money, if any, due from plaintiff to defendants by reason of damages to defendants as of that date sustained and accrued by the failure, if any, of plaintiff, to comply with the terms of the contract of purchase. The finding of said arbitrators shall be final and conclusive upon all of the parties and said parties agree to abide by the same. Said arbitrators shall consider in determining the amount to be paid by defendants to plaintiff or by plaintiff to defendants: (a) the sums paid to defendants by plaintiff; (b) sums paid by plaintiff in improving the property and for the general benefit of the sawmill and sawmill industry; (c) the value of all goods in process of manufacture and all additions to the store stocks; (d) the failure, if any, of defendants to comply with the terms of the contract and the damage thereby caused plaintiff. The said arbitrators shall further consider in determining the amounts due either party from the other: (a) amounts due as stumpage in accordance with agreement of purchase, which said agreement is canceled by virtue of this agreement; (b) interest due from February 20, 1920, to June 2, 1920, in accordance with the terms of the agreement; (c) any damages which may have been incurred by said first parties by reason of the occupation of said premises by plaintiff, and the failure, if any, to comply with the terms of the contract of purchase.

We have detailed the provisions of the agreement of June 1, 1920, for the reason that the entire controversy results therefrom.

Thereafter each party designated an arbitrator. The person selected by plaintiff was one McConnell and the one chosen by defendants was named McFaul. The finding of the trial court, which is not attacked, recites:

"Thereupon said McConnell met with McFaul and presented to him a statement of accounts claimed by plaintiff as due him from defendants under the terms of said contract. McFaul failed and refused to discuss the statement with McConnell, and refused to arbitrate the claim of plaintiff in accordance with the terms of the contract, and refused to agree upon the amount to be paid plaintiff by defendants. Thereupon McConnell delivered and submitted by registered mail the names of various persons to McFaul for selection of a third arbitrator. McFaul failed and refused to approve or reject any of said names, and failed and refused to submit the names of any third persons on his part to act as such arbitrator, and McFaul failed and refused to carry out the terms of the arbitration agreement, and failed and refused to approve or agree upon the appointment of a third arbitrator. Plaintiff notified defendants of these facts and of the acts and conduct of McFaul, and requested defendants to have McFaul proceed or else that defendants appoint another arbitrator to act in place of McFaul. Defendants failed and refused to have McFaul proceed with the arbitration, and failed and refused to appoint another arbitrator to act in the place and stead of McFaul. Defendants failed and refused to carry out the terms of their agreement. No arbitration was had in accordance with the terms of said agreement or at all, and said attempted arbitration wholly failed."

This finding being unassailed, we accept it as a correct statement of the situation.

Incidentally we may note here that the finding as it appears herein has been deleted of repetitive clauses and therefore is not in the exact language of the trial court, though quoted as such. The change, however, is not a variance in any respect.

On July 11, 1921, plaintiff notified defendants that owing to the failure of McFaul to arbitrate, the arbitration terms of the agreement could not be carried out, and demanding that defendants pay him the sum of $10,486.34 due him under the terms of said agreement. Defendants having declined to pay the sum demanded or any sum, plaintiff commenced the present action.

The complaint is in three counts. Plaintiff first pleads the original contract of purchase and then the agreement of June 1, 1920, and the failure of the arbitration agreement therein contained; he alleges his due performance of all obligations and his willingness and ability to proceed where there has been insufficient performance, and alleges further the amounts due him and asks judgment therefor.

The second count is for moneys had and received and the third count seeks the recovery of moneys expended by plaintiff for the use and benefit of defendants.

The answer denied categorically the allegations of the complaint and set up the failure of the arbitration as due wholly to acts of plaintiff. Defendants thereafter and before trial filed a cross-complaint, claiming damages for breach of the original contract of purchase and damages resulting to them by reason of occupancy by plaintiff, and also set forth many other items of damage. Plaintiff denied specifically the allegations of the cross-complaint and a trial was had. Plaintiff recovered judgment for $4,818.60.

At some length we have thus set forth the controversy, deeming it necessary to a better understanding of the contentions made. Certain other facts as found may appear hereinafter in connection with the several points as each is discussed.

Defendants and appellants contend at the outset that plaintiff has no cause of action under the agreement of June 1, 1920, or otherwise or at all, save and except that he may, upon a sufficient showing, recover any damages he may have sustained in preparing for and attending the arbitration and costs. The contention of appellants further develop to the claim that the arbitration agreement of June 1, 1920, was rescinded by plaintiff, and hence plaintiff could not recover under it, and that in any event there

was no covenant in the agreement on the part of defendants to pay plaintiff any moneys.

Taking this contention in the face of the fact that defendants received back the properties and plaintiff received nothing in return, it falls of its own weight. Surely, if there was an agreement to arbitrate and this was rescinded, using the term as including all the elements of a proper rescission, it is difficult to see just what rights of plaintiff were lost or how he could be foreclosed of any legal rights theretofore existing. And if the agreement contained no covenant that defendants would pay any damages to plaintiff as a result of the arbitration it seems as though there was little purpose thereof. Defendants' argument is based upon the assumption and conclusion that the agreement of June 1, 1920, was a submission to arbitration and nothing else. A reading of the agreement suffices to negative this idea. The main purpose of the agreement was to rescind and render inoperative the original contract of purchase, and incidental thereto and as a necessary element of the rescission, restore each party to his original status. As far as the original contract of purchase was concerned, the plaintiff surrendered to defendants the properties described therein and defendants accepted possession thereof and surrendered all claims against plaintiff for further performance. Nothing remained to effectually complete the rescission excepting the restoration of the *status quo*. This could not be effected without a determination of the amount due from one to the other, and this one feature alone was to be determined by the arbitration. So, rather than characterize the entire agreement as a submission to arbitration, it was in essence an agreement of rescission with the *status quo* to be arrived at through arbitration. Plaintiff did all that he could do, and on his part the agreement of rescission was virtually executed. The court below evidently took this view of the matter and proceeded to do what the parties originally intended should be done by the arbitration.

In the case of *Gunton* v. *Carroll*, 101 U. S. 426 [25 L. Ed. 985], an ancient case is quoted with approval as follows: "Here is a man who has had the full benefit of the partnership in respect to which this agreement was made, and now he refuses to have the rest of the agreement performed on

account of the difficulty which has arisen. If the valuation cannot be made *modo et forma* the court will substitute itself for the arbitrators."

An arbitration clause of a contract will not be construed as ousting the courts of jurisdiction unless such construction is inevitable, so that, unless the cause is made a condition precedent by express words or necessary implication, it will be construed as merely collateral to the liability clause, and is no bar to an action without an award. (2 R. C. L. 363; *Oakdale Irr. Dist.* v. *Beard*, 47 Cal. App. 66, 72 [190 Pac. 224]; *Hamilton* v. *Home Ins. Co.*, 137 U. S. 370 [34 L. Ed. 708, 11 Sup. Ct. Rep. 133]; *Loup* v. *California S. R. R.*, 63 Cal. 97; *Mead* v. *Owen*, 83 Vt. 132 [74 Atl. 1058]; *Long* v. *Cromer*, 181 N. C. 354 [107 S. E. 217].)

It is needless to follow the subject of arbitration through all of its phases. It has been frequently decided, and now seems to be the settled law, that an agreement to refer a case to arbitration will not be regarded by the courts, and they will take jurisdiction and determine a dispute between the parties, notwithstanding such an agreement. (*Holmes* v. *Richet*, 56 Cal. 307 [38 Am. Rep. 54]; *Davissin* v. *East Whittier Land Co.*, 153 Cal. 85 [96 Pac. 88].)

As found by the court in the case at bar, the agreement to submit to arbitration failed and was of no effect wholly through the refusal of defendants to proceed therewith. In *Armstrong* v. *Sacramento V. R. Co.*, 52 Cal. App. 116 [198 Pac. 217], two cases are cited and quoted with approval, viz.:

*Cogswell* v. *Cogswell*, 70 Wash. 178 [126 Pac. 431], saying: "The matter in suit having been settled by the solemnly executed contract of the parties, that contract having been partly performed on both sides, the failure to arbitrate relating only to a nonessential incident, not giving ground for a rescission, it follows that the appellants have mistaken their remedy. They should have applied to the court for the enforcement of the contract by fixing the price of the land."

And *Town of Bristol* v. *Bristol Water Works*, 19 R. I. 413 [32 L. R. A. 740, 34 Atl. 359], where it is said: "In such a case the courts hold that the matter of determining

the price is matter of form rather than of substance; and if it becomes evident that it cannot be determined in the manner provided for in the contract, by refusal of one party to do what in equity he ought to do, the court will determine it on the application of the other."

In *Parsons* v. *Ambos*, 121 Ga. 98 [48 S. E. 696], the court said: "So, too, in contracts of sale the parties may stipulate that the value of the property shall be ascertained by appraisers before either has the right to sue. The fixing of values, however, is a mere incident and not of the substance of the contract."

In *Armstrong* v. *Sacramento V. R. Co., supra*, it is said: "We entertain no doubt that the refusal of the appellant to join in the selection of a third appraiser justified the trial court, sitting as a court of equity, to take the matter in hand and itself fix the values and afford the appellants an opportunity to complete the transaction upon the values thus fixed. Upon their failure so to do it is well settled that the court could grant, as an alternative, a judgment for monetary relief."

In the instant case appellants urge no facts and advance no theory from which it could be even inferred that any harmful effect follows the failure to arbitrate. Appellants simply urge that plaintiff agreed to submit the question of the amounts due either party to arbitration, and because appellants refused and failed to arbitrate plaintiff has no remedy outside of and beyond the remedy of recovering any costs incident to the attempt to arbitrate. Such a holding would surely evidence a weakness in the law and an alarming deficiency in the courts.

When the last analysis is made we are brought back to the original rights of the parties, namely, to be placed *in statu quo*. This was the substance of the contract. The purpose of forcing plaintiff back to another attempt to enforce the arbitration part of the agreement would be to have determined what the status was. And we have here a determination by a court of competent jurisdiction responsive to pleadings of both parties presenting this very question for determination.

There are two well-settled principles of law which may be here applied. First, the law abhors a multiplicity of

actions, and, second, the law does not require needless things to be done. If this court should go to the extreme of upholding the defendants' contention it would simply mean a change in the form or theory of the action in order to arrive at a determination of the same facts litigated here. It may be here noted that nowhere in the pleadings do the appellants set up any claim of estoppel against plaintiff's right to sue and maintain the action; and defendants themselves, by way of cross-complaint, set up their claim under the original contract regardless of the so-called arbitration agreement. In this state of the record appellants will not be permitted, after a full determination of the claims of both parties, to set up that plaintiff should be deprived of the fruits of the litigation and sent back to force out an arbitration agreement which has long since failed. ■ Where an agreement to arbitrate is entered into incident to the main agreement of the parties, and one of the said parties, without fault on the part of the other, fails and refuses to proceed with the portion of the agreement providing for arbitration, then such other party may proceed in court to enforce his demands regardless of the broken promise of the other.

The appellants next contend that as to defendant Sallie A. Mitchell there is no evidence upon which a judgment against her could lie because she did not execute the agreement of June 1, 1920, and there is no written authority shown in W. D. Mitchell to sign for her.

Sallie A. Mitchell did execute the original agreement of purchase, and did receive back the property as a co-owner under the terms of the agreement of June 1, 1920, rescinding the original purchase contract. Further than this, as a party defendant herein she asserted her rights and set up her claim arising out of an alleged violation of the original contract. In the cross-complaint filed therein by both defendants Sallie A. Mitchell and W. D. Mitchell the execution of the contract by both defendants is admitted and alleged. We conclude there is no merit in this contention of appellants that the evidence does not support the judgment against Sallie A. Mitchell. ■ A party who accepts the benefits of a contract is bound thereby even if he has not signed it. (*Remsberg* v. *Hackney Mfg. Co.*, 174 Cal.

802 [164 Pac. 792].) After the agreement of June 1, 1920, whereby the properties were turned back to the Mitchells, to wit, on June 21, 1920, Sallie A. Mitchell, together with W. D. Mitchell, entered into an agreement with a third party whereby they agreed to sell the same properties that had been returned by plaintiff. Also there appear three other transactions later in date wherein defendant Sallie A. Mitchell joined in agreements to convey the property as co-owner.

The evidence conclusively shows that after the contract of rescission of June 1, 1920, defendant, Sallie A. Mitchell accepted the benefits thereof and accepted the properties returned thereby. There is here shown not a mere voluntary compliance with the conditions of the contract by one who has not previously assented to it. There is distinctly shown part performance under it and an accession to its terms by both parties. Such an accession to the terms of the contract and such a performance under it would make it inequitable to permit appellant to avail herself of this defense, and she is estopped from doing so under familiar principles (*Sparks* v. *Mauk*, 170 Cal. 122 [148 Pac. 926]).

Appellants further complain that the trial court erred in admitting certain testimony relative to the value of the properties involved in the original contract of purchase.

It was appellants' claim that they had been damaged by the failure of plaintiff to consummate the sale, and that the measure of such damage was the difference between the price agreed to be paid and the value of the property to them. This claim they base upon the terms of the agreement of June 1, 1920, wherein it is provided that there shall be determined the amount of damage, if any, due defendants sustained and accrued by the failure, if any, of plaintiff to comply with the terms of said contract. Necessarily in this issue evidence of value was material and necessary. However, the trial court expressly found ''that plaintiff has fully complied with the terms and conditions of the agreement entered into by and between plaintiff and defendants for the sale of said real estate and personal property.'' This finding is not attacked nor is any reference made to the insufficiency of the evidence upon which it is based. Therefore, if there was no violation of the contract no damage for breach thereof would result. And if the

court erred in its method of attempting to ascertain the amount of damage, in case damages might have been awarded, it is of no interest here.

Lastly, appellant claims that the judgment is erroneous in so far as it allows plaintiff interest on the amount found due him.

The judgment decrees plaintiff interest on the amount awarded him, to be compounded from June 2, 1920. We think appellants are correct in their contention. Plaintiff himself in his complaint admitted an accounting necessary by reason of the failure to arbitrate, and pleaded his willingness and ability to pay any and all amounts found due from him to defendants. The answer and cross-complaint of defendants presented many unliquidated demands concerning which testimony was required to be taken and evidence adduced. That the claims of defendants were to a large extent meritorious appears from the allowance made by the court of $5,667.74. The plaintiff had paid $5,000 on the contract of purchase, and had expended $5,486.34 in improvements to the property and in additions to the store and mill. The court found after much evidence that plaintiff was liable to the defendants in the sum of $5,667.74 on account of many items, including value of personal property used, taken, and destroyed, and also on account of goods sold. The defendants by their cross-complaint asked for $30,000. The entire purpose of the action was to strike an account between the parties. The agreement of June 1, 1920, disclosed that each party held unliquidated demands against the other. To say that because plaintiff paid $5,000 at the commencement of his possession under the contract, and therefore that represented a liquidated claim is not accurate. The amount may be definite as an item of demand, but as to its validity or payment it still rested subject to account. The plaintiff was in possession of property of the value of in excess of $100,000. A large amount of personal property was turned over to him of a portable nature and easily removed. In comparison with the potential liability the cash payment was indeed small. In the arbitration agreement, the working out of which the court assumed, all of these things were provided for and understood by the parties. The matter of adjusting the rights

of the parties was not a mere matter of calculation. It involved careful estimate and application of legal principles and judicial determination. Whether plaintiff had taken from the property more than he had expended thereon or paid to defendants could be ascertained only through examination and inventory. Whether or not he had permitted liens to accumulate against the property was likewise conjectural. ■ Where, as here, the court finds that the defendants did have a substantial claim and demand, controversial in character, we think the case falls within the doctrine announced in *Curtin* v. *State of California,* 61 Cal. App. 377 [215 Pac. 689], that interest is not allowable upon the theory ''that the person liable does not know the sum he owes and therefore can be in no default in not paying.'' Interest has relation to an ascertained principal sum (*Morris* v. *Standard Oil Co.,* 192 Cal. 356 [30 A. L. R. 1103, 219 Pac. 998]). ■ The general rule is that interest is allowable from the time the sum in suit becomes due if the same is certain or can be made certain by mere calculation (*Gray* v. *Bekins,* 186 Cal. 389 [199 Pac. 767]; *McNutt* v. *City of Los Angeles,* 187 Cal. 259 [201 Pac. 592]; *Cox* v. *McLaughlin,* 76 Cal. 60 [9 Am. St. Rep. 164, 18 Pac. 100]).

The case of *McCowen* v. *Pew,* 18 Cal. App. 482, 487 [123 Pac. 354], does not control the instant case for the reason that the plaintiff's claim did not represent a loss of a pecuniary value ascertainable certainly as of a definite time.

The agreement of June 1, 1920, unmistakably suggests the uncertainty surrounding the adjustment necessary to restore the original status, and presents such an actionable controversy as to negative any claim of interest as here allowed.

The judgment is modified by striking therefrom all allowance of interest to date of judgment. As thus modified it will be affirmed, but without costs to appellants, and respondent to recover his costs.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on April 19, 1928.

All the Justices concurred.