Filed 8/24/23  Triton Property Investments v. George CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRITON PROPERTY INVESTMENTS, LLC, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> RICHARD GEORGE et al., <br><br>     Defendants and Appellants. | A163973 <br><br><br> (San Mateo County Super. Ct. No. 21UDL00115) |

Defendants Richard George and Sandrine Clark, representing themselves, appeal from a jury verdict in an unlawful detainer action.  Triton Property Investments, LLC (Triton) notified defendants it was terminating their lease to a rental cottage because it was taking the property off the rental market.  Defendants refused to leave; they argued the lease agreement expressly allowed termination only in an unlikely event.  A jury found in Triton's favor, restored possession to it, and awarded $62,500 in reasonable rental damages for a seven-month holdover.  On appeal, defendants make several challenges to the unlawful detainer judgment: they argue the lease agreement could not be terminated as a matter of law; Triton did not comply with its obligations for providing notice of termination under the Tenant Protection Act of 2019 (Act) (Civ. Code, § 1946.2 et seq.; undesignated

1

statutory references are to this code); the trial court made several erroneous rulings; and the damages award is excessive. We affirm.

**BACKGROUND**[1]

Carleen Whittelsey owned property in Woodside consisting of one main house and two cottages. In 2016, Whittelsey leased a cottage to George and his then-girlfriend for a fixed term of one year. When that term expired, the lease converted to a month-to-month tenancy. George was required to provide notice 60 days before terminating the agreement after the initial lease period expired. The lease also provided, "[i]n the unlikely event that the owner needs to terminate renting the cottage after the lease has expired, a 60 day notice will be given to the tenants from the owner."

Triton, a real estate investment and development company, purchased Whittelsey's property in November 2019. It intended to take the house and cottages off the rental market and sell them as a single-family home. To that end, it developed plans to tear down the main house and rebuild a new one, and completely gut and renovate the two cottages. On December 30, 2020, Triton notified George via email and certified mail he must vacate the property in 60 days so it could begin construction. George, who was living with Clark at the time, countered this lease could not be terminated unless there was an unlikely event or a legitimate need. Shortly after, George informed Triton he had "exclusive use and possession" of the property based on a court order from a domestic violence dispute. He filed a civil case

---

[1] While this appeal was pending, defendants filed a motion to strike portions of Triton's brief, arguing it refers to evidence outside the record. (Cal. Rules of Court, rule 8.204(e).) We deny the motion. The objectionable references were sourced from witness testimony presented at trial, not documents the parties stipulated to excluding from evidence. While defendants also seek to strike testimony they assert is false, they fail to demonstrate this is a proper basis for striking portions of a brief. (*Ibid.*)

against Triton, alleging he owned the property and sought $10 million in damages.

On January 26, 2021, Triton served defendants with a 60-day notice of termination of tenancy. The notice stated Triton was withdrawing the property from the residential rental market. (§ 1946.2, subd. (b)(2)(B).) A process server mailed the notice to defendants. He also attempted to personally serve defendants at the cottage. When outside the house, he saw Clark sitting inside on a couch. Upon seeing the process server, Clark walked away into another room. She did not respond when the server knocked on the door and called out for both George and Clark. The process server then posted a copy of the notice on the front door so it could be easily identified when entering or exiting the cottage.

After George and Clark did not vacate the premises within 60 days, Triton filed an unlawful detainer action on March 30, 2021 to recover possession. The process server attempted to personally serve George and Clark at their residence several times each day over the course of eight days, but no one ever responded. The trial court granted Triton's request to serve defendants by posting and mailing the summons and complaint on April 14, 2021.

In July 2021, George and Clark filed a demurrer, arguing the lease created a condition precedent to terminating the lease — that it could only be terminated upon the occurrence of an "unlikely event." They also argued the complaint failed to allege that the requisite 60-day notice was personally served, and whether notice withdrawing the property from the rental market was provided to them. The trial court overruled the demurrer.

After a jury trial at which George and Clark represented themselves, the jury found Triton was entitled to possession of the property. The jury

3

awarded $62,500 in damages as the reasonable rental value of the property from the date after the expiration of the notice of termination of tenancy through the date of the verdict.

## DISCUSSION

Defendants make several challenges to the unlawful detainer judgment. "The Unlawful Detainer Act governs the procedure for landlords and tenants to resolve disputes about who has the right to possess real property." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.) Plaintiffs may file unlawful detainer complaints under specific circumstances enumerated in Code of Civil Procedure section 1161. (*Stancil*, at p. 395.) Relevant here, a plaintiff can seek possession when the tenant continues to possess the real property after the expiration of the term for which it was leased to the tenant. (Code Civ. Proc., § 1161, subd. (1).) We review questions of law de novo and factual findings for substantial evidence — considering the evidence in the light most favorable to the prevailing party and drawing all reasonable inferences in support of the findings. (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364.) We do not reweigh the evidence or assess witness credibility. (*Foreman*, at p. 365.) With this framework, we review defendants' arguments below.

### I.

Defendants contend the lease agreement contained a condition precedent to terminating the lease. According to defendants, the sentence — "In the unlikely event that the owner needs to terminate renting the cottage after the lease has expired, a 60 day notice will be given to the tenants from the owner" — required the occurrence of an unlikely event before Triton could terminate the lease. We disagree.

4

Interpreting a contract requires giving "effect to the mutual intention of the parties as it existed at the time of contracting." (§ 1636.) To ascertain the intent of the parties, we review the contract's written provisions, giving them their plain and ordinary meaning. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 531.) Extrinsic evidence may be referenced "to ascertain whether it supports an interpretation to which the agreement is reasonably susceptible." (*Id*. at p. 532.) Where the extrinsic evidence is not in conflict, we review the contract de novo. (*Ibid*.)

A "condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313; § 1436.) Generally, conditions precedent are created expressly, with words such as "subject to" or "conditioned upon." (*Estate of Jones* (2022) 82 Cal.App.5th 948, 953.) Conditions precedent are generally disfavored — courts "will not interpret a provision as a condition precedent absent clear, unambiguous language requiring that construction." (*Ibid*.)

No such unambiguous language creating a condition precedent appears here. The plain language does not require termination be "conditioned upon" or "subject to" an unlikely event. (*Minton v. Mitchell* (1928) 89 Cal.App. 361, 368.) The phrase, "[i]n the unlikely event that the owner needs to terminate renting the cottage after the lease has expired," is followed by an additional phrase requiring the owner to provide 60-days notice of termination. In its entirety, the sentence sets forth the requisite notice the owner must provide the tenant before needing to terminate the lease. But it does not unequivocally limit the circumstances under which the owner

5

is authorized to terminate the lease. (*Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 890.)

Moreover, we observe the extrinsic evidence submitted at trial supports the conclusion that the phrase "unlikely event" did not unambiguously create a condition precedent. (*Hewlett-Packard Co. v. Oracle Corp.*, *supra*, 65 Cal.App.5th at p. 538.) Though George expressed his desire to rent the cottage long term, Whittelsey testified the term "unlikely event" simply indicated it may be unlikely defendants would have to move immediately after the initial one-year lease expired. She noted she may need to use the cottage if her family moved in, but she emphasized to George she would provide defendants 60 days of notice before terminating the lease. Whittelsey expressly disavowed making any representations defendants could remain on the property for their entire lives or that the lease could only be terminated if there was an unlikely event such as an earthquake. And as George testified, these events were merely presented as examples of unlikely events. Termination was not limited to those situations. As a matter of law, there was no condition precedent in the lease agreement.

## II.

Defendants next argue we must reverse the judgment because there is insufficient evidence Triton complied with its obligations under the Act. (§ 1946.2 et seq.) According to defendants, Triton was not authorized to terminate their lease agreement because its statements the property was being withdrawn from the rental market and substantially remodeled were false. They further argue Triton failed to properly serve the 60-day notice of termination of tenancy. Neither argument warrants reversal.

The Act is a comprehensive anti-rent gouging and eviction control law. (*Borden v. Stiles* (2023) 92 Cal.App.5th 337, 346.) It provides, in relevant

6

part, "the owner of the residential real property shall not terminate the tenancy without just cause" if one or more tenants, as here, have continuously and lawfully occupied the property for 12 months or more. (§ 1946.2, subd. (a)(1).) "Just cause" can be defined as "[n]o-fault just cause." (*Id.*, subd. (b)(2).) Examples of no-fault just cause include withdrawing the residential property from the rental market or intending to demolish or substantially remodel the residential rental property. (*Id.*, subds. (b)(2)(B), (D).) Just cause must be stated "in the written notice to terminate tenancy." (*Id.*, subd. (a).)

Here, Triton notified defendants it was withdrawing the cottage from the rental market. (§ 1946.2, subds. (a)–(b).) Derek Gaffney, a managing member of Triton confirmed this intent in his testimony. To the extent the jury credited this testimony, we defer to that determination here. (*People v. Jones* (1990) 51 Cal.3d 294, 314 [determining the credibility of witnesses is the exclusive province of the jury].) Indeed, in March 2021, Triton entered into a contract to sell the property to a third party. The sale has not been completed — escrow has not closed — due to the possession dispute between defendants and Triton. The third party intended to demolish the three buildings on the property and rebuild them as a family home for themselves, all supporting the statement the cottage was being removed from the rental market.

Defendants insist this testimony is false because Triton also separately expressed the need to terminate the tenancy to substantially remodel the cottage. Not so. The substantial remodel was part of its effort to take the cottage off the rental market. After purchasing the property, Triton planned to entirely tear down the main house and renovate the cottages to sell the property as a single-family home. The plans required completely tearing

7

down the cottage to its structural studs, as well as installing a new roof. Because Triton's plans involved a gut renovation, it would not obtain the necessary permits to perform the construction while people were residing inside. (§ 1946.2, subd. (b)(2)(D)(ii) [defining "substantially remodel" as substantial modification of any structural system requiring a permit from a government agency].) Triton finished developing its construction plans by approximately November 2020. The notice of termination was sent January 26, 2021, giving Triton approximately two months to obtain the requisite permits to start construction while defendants vacated the premises. There was sufficient evidence to support Triton was withdrawing the cottage from the rental market.[2]

We similarly reject defendants' argument that Triton's service of the 60-day notice of termination did not comply with the Act. (§ 1946.2, subd. (a)(1).) Notices terminating tenancies must "be given in the manner prescribed in Section 1162 of the Code of Civil Procedure or by sending a copy by certified or registered mail addressed to the other party." (§ 1946.) Relevant here, if "a person of suitable age or discretion there can not be found" at the tenants' place of residence or usual place of business, notice can be served "by affixing a copy in a conspicuous place on the property, and also

---

[2] There is no showing Triton engaged in bad faith — falsely representing it was going to begin construction in retaliation. Thus, defendants' argument the unclean hands doctrine bars its possession of the cottage is meritless. (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 432 ["equitable doctrine of unclean hands applies when a plaintiff has acted unconscionably, in bad faith, or inequitably"].) There is also no indication Triton acted in bad faith by noting it could terminate the lease due to Clark residing at the cottage despite not being named in the lease agreement; her residence violated the lease agreement. And in any event, the notice of termination did not justify terminating the lease on Clark's unauthorized residence.

8

delivering a copy to a person there residing, *if such person can be found*; and also sending a copy through the mail addressed to the tenant at the place where the property is situated." (Code Civ. Proc., § 1162, subd. (a)(3), italics added.)

As a preliminary matter, we reject defendants' assertion Triton sent the notice of termination three weeks after eviction proceedings commenced. Triton posted and mailed the notice to defendants January 26, 2021. It filed the unlawful detainer action on March 30, 2021. Moreover, defendants are not entitled to assert Triton improperly served the notice of termination — Clark frustrated the process server's attempt at personal service. (*Crescendo Corp. v. Shelted, Inc.* (1968) 267 Cal.App.2d 209, 213.) Upon seeing the process server at the cottage, Clark walked out of the front room and did not respond when he knocked on the door or called defendants' names. There was no indication George was present. By posting the notice on the cottage front door, the process server ensured defendants would see the notice upon entering — a conspicuous place. (Code Civ. Proc., § 1162, subd. (a)(3).) In these circumstances, Triton properly served defendants by posting and mailing the notice. (*Crescendo Corp.*, at p. 212 [where individual refuses service, " 'the service may be made by merely depositing the process in some appropriate place where it would be most likely to come to the attention of the person being served' "].) The process server also mailed the notice to defendants' residence. Indeed, defendants acknowledged in a federal complaint they received the notice of termination. Because defendants were properly served, Triton's judgment for possession is proper. (*Liebovich v. Shahrokhkhany* (1997) 56 Cal.App.4th 511, 513.)

Finally, we reject defendants' argument they were not properly served with the summons and complaint because Triton failed to file a proof of

9

service. Even assuming service was improper, defendants waived any irregularity by making a general appearance. "A general appearance by a party is equivalent to personal service of summons on such party" and cures any defects in service. (Code Civ. Proc., § 410.50, subd. (a); *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) Indeed, a general appearance, such as contesting the merits by filing a demurrer or answer, can compensate "for a complete failure to serve a summons." (*Sparks Construction, Inc.*, at p. 1145; *366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1193–1194; Code Civ. Proc., § 1014.) Defendants filed both here. Defendants forfeited any objection to defective service. (*Sparks*, at p. 1148.)

We do not address defendants' passing statement that Triton failed to provide timely written notice of their rights under the Act — that notice was provided on January 22, 2021. (§ 1946.2, subd. (f).)[3] Aside from stating the notice was untimely, defendants proffer no argument that late compliance with this provision requires reversing the judgment, thus forfeiting the issue. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["It is not our place to construct theories or arguments to undermine the judgment . . . .

---

[3] For tenancies existing prior to July 1, 2020, as here, owners of residential real property must provide "written notice to the tenant no later than August 1, 2020," of specific information articulated by the statute. (§ 1946.2, subd. (f)(2)(A).) The notice must be in no less than 12-point type and include specific language identifying a landlord's obligations when terminating a tenancy. (*Id*., (f)(3).) The requisite notice language is as follows: "California law limits the amount your rent can be increased. See Section 1947.12 of the Civil Code for more information. California law also provides that after all of the tenants have continuously and lawfully occupied the property for 12 months or more or at least one of the tenants has continuously and lawfully occupied the property for 24 months or more, a landlord must provide a statement of cause in any notice to terminate a tenancy. See Section 1946.2 of the Civil Code for more information." (*Ibid*.)

When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)  Though we are sympathetic to the fact defendants are representing themselves without the benefit of an attorney, we treat self-represented litigants as we would any other party or attorney.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

III.

Defendants contend the trial court improperly excluded evidence — a declaration by Triton's process server — and rejected their proposed jury instructions — CACI No. 321 regarding conditions precedent, and elements of CACI No. 4307 regarding sufficiency and service of notice of termination of a month-to-month tenancy.[4]  They also argue the court improperly instructed the jury regarding personal service.  Examining the specifics of defendants' argument is unnecessary because they make no effort to demonstrate the asserted errors were prejudicial.

Evidentiary error is only grounds for reversal if the party "demonstrates a miscarriage of justice, that is, that a different result would have been probable had the error not occurred."  (*Major v. R.J. Reynolds Tobacco Co.* (2017) 14 Cal.App.5th 1179, 1202; Cal. Const., art. VI, § 13; Evid. Code, § 354.)  In their reply brief, defendants argue for the first time on appeal that admitting the process server's declaration would have clarified issues of serving the notice of termination and demonstrated the process

---

[4] We reject defendants' requests for judicial notice of their proposed jury instructions, CACI Nos. 321 and 4307, an exhibit list, since they do not bear on our analysis.  (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482.) We also reject defendants' request for judicial notice of statutory authorities and rules of professional conduct that are already subject to mandatory judicial notice.  (Evid. Code, § 451, subds. (a), (c).)

11

server perjured himself.  Leaving aside this belated attempt to substantively address the evidentiary ruling, this contention fails to explain whether, based on an examination of the record, a different verdict would have been probable if that declaration had been admitted into evidence.  (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894–895, fn. 10 [absent good reason, courts generally do not consider arguments raised for the first time in an appellant's reply brief].)  Defendants have not satisfied their burden of demonstrating reversible error.  (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480 [party claiming error must demonstrate prejudice, it is not presumed].)

Defendants' challenges to the jury instructions fail for the same reason. The erroneous refusal to give a jury instruction or omit an instruction does not mandate reversal.  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.)  Like evidentiary ruling errors, instructional error must be prejudicial, " 'where it seems probable' that the error 'prejudicially affected the verdict' " — a determination that "depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury." (*Ibid.*)  In addition, "[a]ctual prejudice must be assessed in the context of the individual trial record," considering "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580–581.)

We have no duty to examine the record here — defendants fail to address the *Soule* factors or explain how any instructional error resulted in a miscarriage of justice.  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)  Their conclusory statement that the instructions given were

12

prejudicial does not satisfy this burden. (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 615.)

IV.

Defendants contend the trial court abused its discretion by denying a continuance. (*Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 448 [standard of review for granting and denying continuances].) We disagree.

On November 4, 2021, defendants filed their unclean hands motion — that Triton may not recover possession of the cottage because it had unclean hands. The same day the jury rendered its verdict in favor of Triton, and it was discharged. The trial court allowed defendants to argue the motion despite its procedural irregularities. George requested a continuance to allow the attorney who drafted the legal portion of the motion to handle the oral argument. In denying the request, the court explained George was representing himself and had to proceed with the argument. George did not seek substitution of an attorney, and he acknowledged the attorney did not file a notice of appearance.

Defendants have not demonstrated denying the continuance was an abuse of discretion. (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170.) The record indicates defendants had the benefit of retained counsel until trial, at which point they chose to represent themselves. If defendants wanted an attorney to orally argue their unclean hands motion, they had ample time to make that substitution. (*A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1289 [denying continuance to obtain counsel properly denied when party had more than 50 days to do so].)[5] Moreover, the court did not deny defendants the right to be

---

[5] We do not address defendants' argument, under Code of Civil Procedure section 1170.7— allowing a motion for summary judgment to be

represented. It allowed defendants to represent themselves and denied a continuance when they changed their mind after the jury returned a verdict in favor of Triton. While civil litigants have the right to be represented by retained counsel, that right does not guarantee litigants who are representing themselves a continuance for the purpose of obtaining counsel. (*Kim v. Orellana* (1983) 145 Cal.App.3d 1024, 1027; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638–639 [litigants representing themselves held to same rules as an attorney].)

V.

Defendants contend the $62,500 award of damages awarded by the jury is excessive and should be vacated. Defendants waived this argument by failing to raise it in a timely motion for a new trial. (Code Civ. Proc., § 657, subd. (5); *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 759.)

In unlawful detainer actions *not* based on nonpayment of rent, a landlord may recover damages that "*result from* the unlawful detention and accrue during that time." (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 748.) Landlords are entitled to recover damages calculated by the reasonable value of the use of the premises from the beginning of the unlawful detainer through judgment. (*Lehr v. Crosby (*1981) 123 Cal.App.3d Supp. 1, 9.) If "ascertainment of the amount of damages turns on the credibility of witnesses, conflicting evidence, or other factual questions, the award may not be challenged for inadequacy or excessiveness for the first time on appeal," it must first be made in a motion for a new trial.

---

filed after an answer is filed and upon giving five days' notice — the trial court should have granted a continuance since it appears for the first time in their reply brief, thus forfeiting the issue. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., supra*, 78 Cal.App.4th at pp. 894–895, fn. 10.)

(*Greenwich S.F., LLC v. Wong, supra*, 190 Cal.App.4th at p. 759.)  Trial courts can weigh evidence and assess credibility and are better situated than appellate courts to resolve disputes over damages amounts.  (*Ibid.*)

The damages amount here was based on conflicting evidence or other factual questions.  The jury was instructed the " 'amount agreed between the parties as rent is evidence of the reasonable rental value of the property, but you may award a greater or lesser amount based on all the evidence presented' at 'trial.' "  (CACI No. 4340 [pattern jury instructions for reasonable rental value].)  The lease was $5,000 per month or $166.66 per day.  But George testified other rental properties in the area were $8,500 per month.  To the extent the jury awarded damages based on this higher amount, this was an issue of conflicting evidence presented by both parties regarding the reasonable rental value.  (*Greenwich S.F., LLC v. Wong, supra*, 190 Cal.App.4th at p. 759.)  That issue is not one that we can review in the absence of a motion for a new trial.  (*Ibid.*)[6]

## DISPOSITION

The judgment is affirmed.  Triton is entitled to its costs on appeal.

---

[6] We reject defendants' challenge to the damages award based on Code of Civil Procedure section 1179.03.5, subdivision (a)(3)(B), precluding Triton from recovering COVID-19 rental debt in connection with any award of damages.  Rental debt was not an issue in this case, even if the reasonable rental value was the measure of damages.  We also reject defendants' belated request in their reply brief for $2.5 million restitution for unjust enrichment damages.  (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, *supra*, 78 Cal.App.4th at pp. 894–895, fn. 10.)

15

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.

A163973

16