[No. C055116. Third Dist. Feb. 18, 2009.]

FRANS ROODENBURG et al., Plaintiffs and Appellants, v. PAVESTONE COMPANY, L.P., Defendant and Appellant.

## Counsel

Cassinat Law Corporation and John E. Cassinat for Plaintiffs and Appellants.

Vlahos & Rudy, Michael B. McNaughton and Hanson Bridgett Marcus for Defendant and Appellant.

## Opinion

**HULL, J.**—Plaintiffs Hokanson Building Block Company, Inc. (Hokanson), Hokanson's president and sole owner Frans Roodenburg (Roodenburg), and defendant Pavestone Company, L.P. (Pavestone), formed a California limited liability company named Pavestone California LLC (Pavestone California). The operating agreement for Pavestone California appointed Roodenburg general manager and provided that, in the event Roodenburg was terminated or resigned for cause, Pavestone would purchase Hokanson's interest in the company for the value of Hokanson's capital account at the time plus a severance payment.

Nearly two years later, Roodenburg resigned as general manager of Pavestone California for cause. When the parties could not agree on the value of Hokanson's capital account, plaintiffs initiated this action alleging, among other things, breach of contract and breach of fiduciary duty. Following a jury trial, the court entered judgment for plaintiffs on the breach of contract claim in the amount of $543,040, which consisted of $143,040 for Hokanson's capital account and $400,000 for the severance payment. The jury found no breach of fiduciary duty. The court also awarded plaintiffs prejudgment interest in the amount of $489,550.56.

Pavestone appeals, contending the award of damages is inconsistent with the special verdict returned by the jury, which expressly found no breach of contract. Pavestone also challenges the award of prejudgment interest on several grounds.

Plaintiffs cross-appeal, claiming jury misconduct in connection with the verdict on the breach of fiduciary duty claim. Plaintiffs also contend the trial court erred in not awarding compound interest.

In the published portion of the opinion, we conclude plaintiffs are entitled to prejudgment interest on their breach of contract claim, notwithstanding that the amount of their claim was uncertain, because the contract between the parties provides for an award of prejudgment interest. We further conclude

the prejudgment interest provision of the parties' contract is not a "forbearance" agreement within the meaning of the usury section of the California Constitution. Finally, we conclude plaintiffs failed to present any admissible evidence of jury misconduct in connection with their breach of fiduciary duty claim.

In the unpublished portion of the opinion, we conclude the trial court properly interpreted the jury's special verdict in awarding plaintiffs $543,040 on their breach of contract claim and properly declined to award plaintiffs compound interest.

We reject each of the parties' contentions and affirm the judgment.

FACTS AND PROCEEDINGS

Prior to the formation of Pavestone California, Roodenburg was the sole owner of Hokanson, which operated a concrete block manufacturing facility in the Sacramento area. On January 1, 2000, Roodenburg, Hokanson and Pavestone entered into an operating agreement in order to establish the terms and conditions under which Pavestone California would operate (the Operating Agreement). Around this same time, they also entered into a "Contribution Agreement" providing for the transfer of Hokanson's assets to Pavestone California.

Under the terms of the Operating Agreement, Pavestone owned 75 percent of Pavestone California and Hokanson owned 25 percent, with each sharing in profits and losses in the same proportion. The Operating Agreement named Pavestone as the managing member of the new company and Roodenburg as the general manager of "all operations," with such duties and responsibilities as delegated by the managing member.

The Operating Agreement created capital accounts for each member, with such accounts credited with any capital contributions by the member, any liabilities assumed by the member, and a share of any profits earned. The capital accounts were also debited with money or property distributed to the member, any member liabilities assumed by the company, and a share of any operating losses sustained.

Article 8 of the Operating Agreement spells out the consequences of dissolution or bankruptcy of a member. It also contains sections 8.7 and 8.8, concerning the resignation or termination of Roodenburg as general manager. (Further references to sections 8.7 and 8.8 are to the Operating Agreement.) Section 8.7 reads: "In the event Roodenburg dies or resigns as General Manager of the Company, then in that event, Pavestone shall purchase the

Membership Interest of Hokanson for an amount equal to the Capital Account balance of Hokanson. The purchase price for the Membership Interest of Hokanson will be payable in cash in immediately available funds at the closing which shall take place not later than thirty (30) days after the death or resignation of Roodenburg as General Manager of the Company, as the case may be. Any amounts not paid when due as set forth in this section, will bear interest at the rate of one and one-half percent (1 1/2%) per month until paid."

Section 8.8 reads: "In the event Roodenburg is terminated as General Manager of the Company, or in the event Roodenburg objects to or disagrees with a decision of the Members which would affect the strategic direction, capital structure, fundamental operations, or relationships with vendors or customers of the Company, . . . Roodenburg may, on behalf of Hokanson, deliver written notice of such objection or disagreement to Pavestone and within thirty (30) days after receipt of such notice, Pavestone shall purchase the Membership Interest of Hokanson for an amount equal to the sum of (a) the Capital Account balance of Hokanson and (b) the then applicable Severance Payment . . . . The purchase of the Membership Interest of Hokanson, pursuant to this section[,] will be payable in cash in immediately available funds at the closing which shall take place not less than thirty (30) days after the occurrence of the event triggering the purchase pursuant to this section. Any amounts not paid when due as set forth in this section will bear interest at the rate of one and one-half percent (1 1/2%) per month until paid."

Based on an inventory conducted on the property contributed by Hokanson to Pavestone California, the value of Hokanson's capital account was initially set at $1,118,875.

On November 30, 2001, Roodenburg sent Pavestone a letter explaining his disagreement with certain matters that had occurred with respect to the governance of Pavestone California. Roodenburg indicated he believed he had been constructively terminated as general manager of the company inasmuch as his authority over its operations had been severely limited. Roodenburg stated he accepted such termination. However, he further stated: "If you disagree with this conclusion, I hereby resign from my employment with Pavestone California on the grounds that I object and disagree with your decisions affecting the strategic direction, capital structure, fundamental operations and relationships with vendors or customers . . . ." On December 3, Pavestone accepted Roodenburg's resignation.

On July 3, 2002, Pavestone provided plaintiffs an accounting of the amounts it determined were owed to them upon Roodenburg's resignation.

Pavestone computed the value of Hokanson's capital account to be -$27,944. Adding in a severance payment of $400,000 and interest of $25,056.33, and subtracting certain offsets, Pavestone arrived at a figure of $263,688.05. Pavestone included with the accounting statement a check in this amount. Plaintiffs disagreed with Pavestone's calculations and returned the check.

Plaintiffs initiated this action against Pavestone, alleging five causes of action, including breach of contract, breach of fiduciary duty, and accounting. The case went to trial on the breach of contract and breach of fiduciary duty claims alone. The jury returned a special verdict finding that, at the time of Roodenburg's resignation, the value of Hokanson's capital account was $143,040 and Roodenburg was entitled to severance of $400,000. The jury also found there had been no breach of fiduciary duty.

As noted above, the trial court entered judgment for plaintiffs in the amount of $543,040 plus interest of $489,550.56.

Both sides appeal.

DISCUSSION

I

*Breach of Contract**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

*Plaintiffs' Right to Prejudgment Interest*

The trial court awarded plaintiffs prejudgment interest in the amount of $489,550.56. Pavestone contends this was error, because the amount owed on plaintiffs' breach of contract claim was uncertain until the jury reached its verdict. Pavestone cites Civil Code section 3287, subdivision (a), which reads in relevant part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." "The test for recovery of prejudgment interest under [Civil Code] section 3287, subdivision (a) is whether 'defendant actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount.' " (*Cassinos v. Union Oil Co.*

---

*See footnote, *ante*, page 185.

(1993) 14 Cal.App.4th 1770, 1789 [18 Cal.Rptr.2d 574], italics omitted.) Pavestone argues the amount owed on plaintiffs' breach of contract claim was uncertain, inasmuch as the value of Hokanson's capital account required extensive calculation. Pavestone points out that plaintiffs asserted at trial the value of the capital account was $622,748, yet the jury found the value to be only $143,040.

Plaintiffs counter that uncertainty in the amount of the judgment is irrelevant where, as here, interest is awarded pursuant to a provision of the contract. Plaintiffs further argue prejudgment interest is appropriate in any event, because the amount of damages was reasonably subject to calculation using information readily available to Pavestone.

■    We agree with plaintiffs that uncertainty in the amount of damages is not a bar to recovery of prejudgment interest under the circumstances of this case. Although Civil Code section 3287, subdivision (a), requires that the amount of damages be certain or capable of being made certain by calculation, that section does not apply where prejudgment interest is part of the contractual amount owed. None of the cases cited by Pavestone to support its contention that section 3287, subdivision (a), bars plaintiffs' recovery of prejudgment interest involved a contractual interest provision. (See, e.g., *Lineman v. Schmid* (1948) 32 Cal.2d 204 [195 P.2d 408]; *Stein v. Southern Cal. Edison Co.* (1992) 7 Cal.App.4th 565 [8 Cal.Rptr.2d 907]; *Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154 [286 Cal.Rptr. 146]; *Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901 [197 Cal.Rptr. 348]; *Schmidt v. Waterford Winery, Ltd.* (1960) 177 Cal.App.2d 28 [1 Cal.Rptr. 874]; *Stockton Theatres, Inc. v. Palermo* (1953) 121 Cal.App.2d 616 [264 P.2d 74]; *Minton v. Mitchell* (1928) 89 Cal.App. 361 [265 P. 271]; *Williams v. Flinn & Treacy* (1923) 61 Cal.App. 352 [214 P. 1024].) In *Schmidt, supra,* 177 Cal.App.2d at page 34, the court observed: " ' "The general rule with respect to allowance of interest, *when there is no contract to pay interest,* is that the law awards interest upon money from the time it becomes due and payable, if such time is certain and the sum is certain or can be made certain by calculation." ' " (Italics added.)

In the present matter, the Operating Agreement contains two provisions requiring the payment of interest on the amount owed by Pavestone. Section 8.7 applies where Roodenburg dies or resigns as general manager and requires Pavestone to purchase Hokanson's interest in Pavestone California for the amount of Hokanson's capital account. Such purchase must take place no later than 30 days after the death or resignation. Section 8.7 further provides: "Any amounts not paid when due as set forth in this section, will bear interest at the rate of one and one-half percent (1 1/2%) per month until paid."

Section 8.8 applies where Roodenburg is terminated as general manager or gives notice of disagreement with a strategic decision of the members, in which event Pavestone is obligated to purchase Hokanson's interest for the sum of Hokanson's capital account and a severance payment. Such purchase must take place no later than 30 days after termination or notice of disagreement. Section 8.8 contains an identical interest provision to that in section 8.7.

Under the express terms of the Operating Agreement, Pavestone is obligated to pay interest on any amount not paid within 30 days of a triggering event. Hence, plaintiffs need not resort to Civil Code section 3287, subdivision (a), to obtain prejudgment interest. The obligation to pay interest on any amount ultimately determined to be owed is no less enforceable than the obligation to pay the value of the capital account or the severance payment.

### III

*Interest Rate*

Pavestone contends the interest rate included in sections 8.7 and 8.8—18 percent per year—violates the usury provision of the California Constitution. Pavestone cites article XV, section 1, which limits the amount that may be charged on "any loan or forbearance of any money, goods, or things in action" for other than personal, family or household purposes, to "the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended . . . ." (Cal. Const., art. XV, § 1, subd. (2).)

Pavestone contends the present matter involves a "forbearance" within the meaning of the foregoing provision. Pavestone reasons that, because the 18 percent interest rate was to begin to apply 30 days after the due date for payment, it is "simply an assessment made by [plaintiffs] for 'waiting to collect the debt' and therefore a 'forbearance' subject to California usury laws." Pavestone argues a forbearance agreement may be made, as here, before the debt matures. According to Pavestone, the parties foresaw that the amount owed on the buyout of Hokanson's interest in Pavestone California would not be paid immediately and provided for the accrual of interest until that amount could be calculated and paid.

Plaintiffs counter that the Operating Agreement is not a forbearance agreement within the meaning of the state usury laws but a "purchase and sale contract." According to plaintiffs, the Operating Agreement does not provide for forbearance but rather has the opposite effect. It imposes a deadline on payment, i.e., 30 days after the triggering event. Further, sections 8.7 and 8.8 do not provide for repayment of a debt; they provide for the purchase of Hokanson's interest in Pavestone California.

Plaintiffs have the better argument. First, Pavestone does not even attempt to establish that an interest rate of 18 percent per year would violate the constitutional provision. This is simply assumed.

■ In any event, "[i]n determining whether a particular transaction is usurious, courts look to its substance rather than to its form. The key question is whether the transaction has as its true purpose the hire of money at an excessive interest rate." (*Sheehy v. Franchise Tax Bd.* (2000) 84 Cal.App.4th 280, 282–283 [100 Cal.Rptr.2d 760] (*Sheehy*).) A "forbearance" has been defined as an agreement to extend the time for payment of an obligation. (*DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 735 [278 Cal.Rptr. 778].) "A forbearance occurs when the creditor, in exchange for consideration, agrees to wait for a period of time to collect the debt. A forbearance may also occur in credit sale transactions, where the original note is modified to extend the period of payment." (*Sheehy*, at p. 284.) A forbearance agreement may be entered into before or after the original due date. (*DCM Partners*, at p. 735.)

In *DCM Partners v. Smith, supra*, 228 Cal.App.3d 729, the plaintiff purchased real property from the defendant in a credit sale, which included a promissory note bearing interest at a legal rate of 10 percent. However, when the plaintiff determined it could not pay the note when due, the defendant agreed to extend the note at an increased rate of 15 percent. (*Id.* at p. 732.) The court found the modification agreement to be a forbearance despite the fact the agreement was reached before the due date of the debt. However, the court went on to find no violation of the usury laws in light of the fact the original transaction was exempt as a purchase and sale agreement. (*Id.* at p. 737.)

In *Sheehy*, the defendant waited six years before enforcing a tax delinquency, and then charged the taxpayer interest at 10 percent compounded daily. The taxpayer brought this action claiming the interest violated the usury laws because the delay in enforcement was, in effect, a forbearance.

The Court of Appeal disagreed, explaining: "Here, defendant's delay in informing plaintiffs of the amount due is not a forbearance. First, the interest assessment does not violate the purpose of the usury laws. Interest is assessed on delinquent taxes, not to take advantage of the taxpayer, but to recover the loss of use of the tax money due. [Citation.] Furthermore, examining 'the substance of the transaction and not the form,' the true purpose of assessing interest on delinquent taxes over and above that allowed by California Constitution, article XV, section 1 is not 'the hire of money at an excessive rate of interest,' but is a penalty assessment." (*Sheehy, supra,* 84 Cal.App.4th at p. 283.)

Examining the substance of the Operating Agreement, and in particular sections 8.7 and 8.8, it is readily clear this matter does not involve a forbearance. First and foremost, there was no agreement between the parties to extend payment of a debt. Plaintiffs never agreed to extend the time for Pavestone to pay the amounts required under section 8.7 or 8.8. On the contrary, plaintiffs sued to enforce payment under those provisions. Furthermore, sections 8.7 and 8.8 did not extend an existing debt. Rather, those provisions created a new obligation, by requiring Pavestone to buy out plaintiffs' interest in Pavestone California.

As in *Sheehy,* the interest provisions in sections 8.7 and 8.8 were not imposed to take advantage of a debtor but to recover the loss of use of the money owed by Pavestone. Also as in *Sheehy,* the purpose of the interest provisions was not the hire of money for a profit but to impose a penalty in order to induce Pavestone to meet its obligation.

Because the interest provisions of sections 8.7 and 8.8 do not amount to a forbearance, those provisions are not subject to the constitutional usury limits.

Pavestone nevertheless contends the interest provisions amount to illegal penalties under Civil Code section 1671. Subdivision (b) of that section reads: "Except as provided in subdivision (c) [regarding consumer transactions and dwelling purchases], a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

Pavestone argues the unreasonableness of the 18 percent interest penalty was clear in January 2000, when the Operating Agreement was signed, and is clear today. Pavestone points out that in January 2000 the value of Hokanson's capital account was approximately $1.1 million and the severance would have

been $500,000. Thus, if section 8.8 had been invoked at that time, Pavestone would have owed plaintiffs $1.6 million, and the 18 percent interest penalty would have amounted to $288,000 per year. Pavestone further points out the interest on the judgment reached in this matter is nearly as great as the judgment itself.

Pavestone's arguments miss the point. Obviously, the greater the amount Pavestone owed and the longer Pavestone failed to pay it, the more the interest penalty would be. Likewise, the more money withheld by Pavestone and the longer it is withheld, the greater the harm to plaintiffs. The real issue here is not the magnitude of the interest charge but the rate used. In this regard, Pavestone makes no attempt to argue the 18 percent rate is unreasonable under the circumstances and presented no evidence to the trial court in this regard.

■ Pavestone argues plaintiffs failed to present any evidence of economic injury suffered as a result of the late payment. Nor did plaintiffs present any evidence of anticipated injury at the time the Operating Agreement was signed. However, plaintiffs had no burden to do so. "Civil Code section 1671, subdivision (b) states a presumption of validity of a liquidated damages clause, and places the burden on the party who seeks invalidation to show that 'the provision was unreasonable under the circumstances existing at the time the contract was made.' '. . . [S]ubdivision (b) gives the parties considerable leeway in determining the damages for breach. All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract.' " (*Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 288 [67 Cal.Rptr.2d 621].)

Because Pavestone failed to satisfy its burden of establishing the 18 percent interest charge was an unreasonable estimate of the damages likely to be suffered by plaintiffs in the event of late payment, the trial court properly rejected Pavestone's claim under Civil Code section 1671.

IV, V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 185.

## Disposition

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Sims, Acting P. J., and Butz, J., concurred.