Filed 8/18/14  Fabinger v. International Fidelity Ins. Co. CA3

### NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| LUDEK FABINGER, | C072328 |
| Plaintiff and Respondent, | (Super. Ct. No. SCV27567) |
| v. | |
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | |
| Defendant and Appellant. | |

Plaintiff Ludek Fabinger contracted to purchase a luxury penthouse condominium at Lake Tahoe, and deposited $3,000,000 in earnest money.  In accordance with state law, this deposit was covered by surety bonds, and then released to the developer.  The developer defaulted on the construction loan, and, at the close of escrow of the condominium, was unable to deliver clear title.  Fabinger demanded of the developer and the sureties the return of his earnest money deposit.  He did not receive return of his deposit.

1

Fabinger, along with other purchasers who had made deposits, brought suit against the developer and the two sureties. As to defendant International Fidelity Insurance Company (IFIC), they sought declaratory relief to resolve whether the surety was obligated to pay them the proceeds of the surety bond equal to their earnest money deposits. Separately, Fabinger moved for summary adjudication as to IFIC. The trial court granted the motion and entered judgment in favor of Fabinger.

IFIC appeals. It contends the trial court erred in granting summary adjudication because (1) the motion should have been continued so IFIC could take Fabinger's deposition; (2) Fabinger's evidence of his deposit lacked foundation; and (3) Fabinger failed to show he was ready, willing, and able to perform his obligations under the purchase contract. Further, IFIC contends (1) it was error to award a money judgment on a declaratory relief action; (2) the judgment failed to acknowledge Fabinger's settlement with the other surety; and (3) the prejudgment interest rate should have been the contract rate of five percent.

We find merit only in the last contention. As we explain, we modify the judgment to provide for a prejudgment interest rate of five percent and reject IFIC's remaining contentions.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2008, Fabinger executed a purchase and sale agreement with Highlands Hotel Company (Highlands) to purchase Penthouse Unit 21 at the Highlands development at North Star. Highlands had accepted the contract on March 31, 2008. The purchase price was $3,305,000, and Fabinger made an earnest money deposit of $3,000,000, which was received on April 17, 2008. The purchase agreement contemplated close of escrow within 30 months after Highlands accepted the agreement. The purchase contract provided that title to the property would be conveyed subject only to permitted exceptions, such as property taxes not yet delinquent and liens approved by the purchaser.

2

The purchase contract set forth the remedy in case of a default by Highlands: "If Seller has not complied with Seller's obligations under this Agreement, Purchaser must send Seller a notice that Purchaser considers Seller to be in default and providing a reasonably detailed statement of the nature of the default. Upon receipt of that notice, Seller shall have ten (10) days in which to fulfill Seller's obligations. Purchaser agrees that Purchaser's sole remedy in the event that Seller does not fulfill its obligations prior to the expiration of the ten (10) day cure period is to rescind this Agreement and to receive a refund of all monies that Purchaser has paid to Seller."

In accordance with state law, Highlands obtained a $3 million blanket surety bond from IFIC to protect the purchasers.[1] The surety bond provided: "Whereas, Principal [Highlands] has elected, in lieu of individual tract bonds, to give this surety bond to the State of California in compliance with Section 11013.2(c) and/or Section 11013.4(b) of the Business and Professions Code of the State of California, as applicable, as a blanket and continuing obligation for the benefit and protection of each and every purchaser of any lot or lots within each and every subdivision now or hereafter offered for sale or lease, or sold or leased by Principal directly or through his agents in the State of California."

Fabinger and Highlands entered into an addendum to the purchase contract. The addendum amended the section relating to default by seller to provide that the purchaser's remedy was a return of monies paid "plus 5% amortized interest from the date of the execution of this Addendum." The time for closing of escrow was changed to be within 20 months. The addendum also provided that the property would be delivered on or before November 15, 2009. If Highlands failed to deliver the property by that date, the parties agreed to a penalty of $550 per day, and the agreement would remain in full

---

[1] Highlands also obtained a surety bond from another surety, RLI Insurance Co. (RLI). That surety bond is not at issue in this appeal, except as discussed in part V, *post*.

3

force and effect subject to the remaining requirements, including the 20-month close of escrow, with an adjustment to the purchase price for the penalty. Fabinger executed the addendum at the same time as he executed the purchase contract; Highlands signed on June 6, 2008.

In March 2010, Highlands and Fabinger entered into an amendment to the purchase contract, reducing the purchase price to $2,999,950. The amendment required the approval of Highlands' lender. The lender did not consent to the reduced sale price.

Highlands defaulted on its construction loan, which was secured by a first deed of trust on the property. The lender was not willing to release the lien for close of escrow on the condominium units. Consequently, Highlands was unable to deliver clean title to Fabinger and complete escrow by the 20-month deadline.

Fabinger and other purchasers brought suit against Highlands, IFIC, and others for return of their earnest money deposits. The first amended complaint (FAC) alleged that "[b]y this Complaint--and prior written notice--plaintiffs notify Highlands of its breach of contractual and other legal obligations and plaintiffs' terminating and rescinding the real estate purchase and sale contracts with Highlands based on its breach of contract, its fraudulent non-disclosures of material facts, and failure of consideration." The FAC also alleged that plaintiffs had notified IFIC of their claims against Highlands and against the surety bond.

The FAC alleged only a cause of action for declaratory relief against IFIC. The FAC alleged that plaintiffs had notified IFIC of their claims on the surety bond and IFIC had not responded. Plaintiffs anticipated that IFIC would deny the claims. Plaintiffs asked the court to resolve the dispute with IFIC as to whether IFIC "must pay to Plaintiffs surety bond proceeds equal to their earnest money deposits, prejudgment interest, and costs of suit."

4

Subsequent to the filing of the FAC, the court-appointed receiver for Highlands executed a notice of termination for Fabinger's purchase agreement for the sale of the unit.

The plaintiffs, excluding Fabinger, obtained a default judgment against Highlands, in the amount of their earnest money deposits plus interest.[2]

Fabinger moved for summary adjudication against IFIC. He set forth as undisputed various facts about the purchase agreements, the surety bond issued by IFIC, and Highlands's inability to deliver a clean title in order to close escrow within the 20-month deadline. He argued he was entitled as a matter of law to an order directing IFIC to return his earnest money deposit from the bond.

In response, IFIC first requested a continuance to take Fabinger's deposition. Further, IFIC argued the motion should be denied because Fabinger had failed to produce admissible evidence to establish his $3,000,000 deposit, and failed to show that he was prepared to perform. IFIC disputed Fabinger's asserted undisputed fact, based on his declaration, that he had deposited $3,000,000 solely on the basis of lack of foundation. IFIC did not offer any conflicting evidence.

The trial court overruled the objection to Fabinger's declaration and granted the motion for summary adjudication. The court entered judgment against IFIC, directing IFIC to pay Fabinger "$3,000,000.00, up to the penal sum or legal limits of the IFIC bond, plus interest at the legal rate of 10% per annum, accruing at $821.90 per day from June 6, 2008, the date escrow was scheduled to close."[3]

---

[2] Around January 2011, Fabinger separated from the other plaintiffs and later obtained his own counsel.

[3] It appears the court misspoke: The June 6, 2008 date was not the date escrow was scheduled to close, but rather was the date the addendum was signed. Under the addendum, the date of the addendum's execution was the date from which interest must be paid if the seller breached the contract.

5

# DISCUSSION

## I

### *Denial of Motion to Continue*

IFIC first contends the trial court erred by refusing to continue the motion for summary adjudication until Fabinger's deposition could be taken.

A. *The Law*

"If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." (Code Civ. Proc., § 437c, subd. (h) (section 437c(h)).)

"The nonmoving party seeking a continuance 'must show: (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. [Citations.]' [Citations.]" (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633 (*Frazee*).) "[S]ection 437c, subdivision (h) requires more than a simple recital that 'facts essential to justify opposition may exist.' The affidavit or declaration in support of the continuance request must detail the specific facts that would show the existence of controverting evidence." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715 (*Lerma*).) Otherwise, any unprepared party could invoke section 437c(h) to obtain an automatic continuance. (*Ibid*.) "The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented." (*Id*. at p. 716.)

Where the party seeking a continuance of a summary judgment motion fails to meet the requirements of section 437c(h), the court must determine whether that party has nonetheless established good cause for a continuance. (*Lerma, supra*, 120 Cal.App.4th at p. 716.) We review the trial court's decision for an abuse of discretion. (*Ibid.*)

B. *IFIC's Showing*

In opposition to Fabinger's motion for summary adjudication, IFIC requested the court deny the motion or grant a continuance to allow IFIC to depose Fabinger. IFIC argued it "should have the right to determine why, if indeed it was true, Mr. Fabinger put down such a large deposit, what his relationship was with the developer and its principals, what other representations might have been made to him or by him at the time he entered into the transaction or thereafter, whether the 'deposit' was in fact a 'loan,' whether such a scheme was merely a way for the developer to raise money from Mr. Fabinger and, since he couldn't secure the loan as a practical matter by further encumbering the property, to try to secure the loan by way of the RLI or IFIC bond. There could obviously be other lines of questioning, as well."

Counsel's declaration supporting the opposition detailed the discovery problems IFIC had with Fabinger. Fabinger failed to verify discovery responses and failed to appear for a scheduled deposition. The declaration did not state what facts counsel expected to learn in the deposition or how those facts are essential to defeat summary adjudication by creating a triable issue of *material* fact.

C. *Analysis*

The declaration failed to fulfill the requirements of section 437c(h). While it set forth the reason that Fabinger's deposition had not been taken, it did not identify the essential facts that may exist or the reason IFIC believed those facts existed. The declaration did not "detail the *specific facts* that would show the existence of controverting evidence." (*Lerma, supra,* 120 Cal.App.4th at p. 715, italics added.) Indeed, it did not detail any facts at all, but spoke only to the discovery problems. Only

the opposition indicated what counsel would ask in the deposition and it showed that counsel wanted to question Fabinger's motive in making such a large deposit in hopes of uncovering unknown facts of undetermined significance. It is not enough to explain what one will *ask* in further discovery; one must explain what one will likely *learn*--the essential facts to oppose the motion--to obtain a continuance. (See *Frazee, supra*, 95 Cal.App.4th at p. 633). Further, the moving party must make this showing by affidavit or declaration. (*Id.* at p. 634; § 437c, subd. (h).)

IFIC failed to meet the requirements of section 437c(h), and offered no other good cause for a continuance. The trial court did not abuse its discretion in denying IFIC's request for a continuance.

## II

### *Evidence of Fabinger's Deposit*

IFIC contends the trial court erred by considering Fabinger's "dubious evidence" of his $3,000,000 deposit. IFIC contends Fabinger's declaration that he made the deposit was inadequate because he provided no foundation, such as when, how and to whom he made the payment.

A witness must have personal knowledge of the particular matter as to which he testifies. (Evid. Code, § 702, subd. (a).) Fabinger's declaration stated that he had personal knowledge of the fact that he deposited $3,000,000 into escrow. "A witness' personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony." (Evid. Code, § 702, subd. (b).) Fabinger's declaration was sufficient to establish that he made the deposit.

IFIC contends oral testimony is not admissible to prove the content of a writing. (Evid. Code, § 1523.) Fabinger, however, was not trying to prove the content of a writing, but the fact that he made a deposit. Tellingly, IFIC offered no evidence to dispute this fact.

8

III

*Ability to Perform*

IFIC contends the trial court erred in granting the motion for summary adjudication because Fabinger failed to prove he was ready, willing, and able to perform the purchase contract. IFIC relies on *Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613 (*Ersa Grae*).

In *Ersa Grae*, that company sued Fluor for damages for breach of a contract to sell real property to Ersa Grae. (*Ersa Grae, supra*, 1 Cal.App.4th at p. 616.) The contract contemplated that, within 120 days of execution of the agreement, Ersa Grae would form a consortium to provide the funding to finance construction on the property. (*Id*. at p. 618.) Fluor decided to sell the property to another company instead of Ersa Grae. (*Id*. at pp. 619-620.) The jury found that a contract had been formed between Ersa Grae and Fluor and that Fluor breached the contract. (*Id*. at p. 620.) In the second phase of the trial, the jury awarded Ersa Grae substantial damages based on the difference between the purchase price and the value of the property at the time of the breach. (*Id*. at pp. 621, 626-627.)

In reversing the judgment and remanding the case for a new trial on damages, the appellate court agreed with Fluor that the trial court should have required Ersa Grae to prove it was ready, willing, and able to perform the contract. "Although it is true that an anticipatory breach or repudiation of a contract by one party permits the other party to sue for damages without performing or offering to perform its own obligations [citation], this does not mean damages can be recovered without evidence that, but for the defendant's breach, the plaintiff would have had the ability to perform. [Citation.]" (*Ersa Grae, supra*, 1 Cal.App.4th at p. 625.) The *Ersa Grae* court explained that Ersa Grae was not required to actually put together the consortium for financing the purchase, but "evidence should have been presented by Ersa Grae to prove that, but for Fluor's

breach, Ersa Grae had the ability (by way of [it's broker's] contacts or otherwise) to form the consortium and fund the deal." (*Id.* at p. 626.)

Fabinger contends there was nothing left for him to perform because he had deposited the entire purchase price. While the amendment to the purchase contract reduced the purchase price to $2,999,500, that amendment required the approval of the lender which was not obtained. Nonetheless, *Ersa Grae* is eminently distinguishable, because here Fabinger sought only return of his deposit, not damages for breach of contract. The FAC alleges that the complaint and prior written notice notified Highlands of its breach of contractual and other legal obligations and of plaintiffs' terminating and rescinding the real estate purchase and sale contracts.

In arguing that *Ersa Grae* applies, IFIC ignores the language of the purchase contracts which set forth the exclusive remedy where the Seller fails to meet its obligations (such as delivering clean title). The sole remedy is rescission and return of monies paid. Fabinger's cause of action against IFIC was for declaratory relief and sought only return of his deposit plus interest and costs. Under the provisions of both the surety bond and the purchase contracts, Fabinger is entitled to return of his earnest money deposit due to Highlands's undisputed inability to deliver clean title. Rescission is an appropriate remedy where there is a material failure of consideration. (Civ. Code, § 1689, subd. (b)(2).)

In his treatise on contracts, Professor Williston distinguishes between suits to enforce a contract for the purchase of land or recover damages and those for rescission and restitution with respect to the need to prove that plaintiff is ready, willing, and able to perform.[4] Noting the considerations of equity in rescission, the treatise indicates that if,

---

[4] In concluding that Ersa Grae had to prove its ability to perform the contract, the court relied in part on Professor Williston's treatise on contracts. (*Ersa Grae, supra*, 1 Cal.App.4th at p. 625.)

as here, the contract provides the contingencies in which restitution shall be allowed, that provision will be enforced. (26 Williston on Contracts (4th ed. 2003) § 68:10, p. 112.) The treatise cites as an example the exact situation here: where a seller who has accepted deposits from buyers is then unable to deliver clean title. "Thus, where a defendant sought to resist a plaintiff's demand for restitution of a down payment on land that the plaintiff had contracted to purchase and to which defendant could not convey good title by asserting that the plaintiff was motivated by a desire to avoid the transaction in bad faith and had not shown himself willing and able to perform, the court ruled: [¶] 'A contract for the purchase of lands may be rescinded, and the purchase moneys paid in advance may be recovered, on the failure of the seller to perform, even though the purchaser could not have performed. In an action to rescind and recover payments made on account of the purchase price it is enough to show a breach by the seller. This is not the rule, however, when the action is to enforce the contract or to recover damages; for the seller's breach, here, the one seeking damages for its breach must tender and prove his own readiness, willingness, and ability to perform.' " (26 Williston on Contracts, *supra*, § 68:10, pp. 114-115, quoting *Weintraub v. Rungmar Realty Corp.* (Sup.Ct.1962) 231 N.Y.S.2d 241, 244.)

California law permits recovery of the buyers' deposits in this situation. In *Rutherford Holdings, LLC v. Plaza Del Ray* (2014) 223 Cal.App.4th 221, the parties contracted for the purchase and sale of a mobile home park. Rutherford made a substantial deposit, but the sale was never completed and Rutherford sued to recover its deposit. (*Id*. at pp. 226-227.) After sustaining defendant's demurrers, the trial court entered a judgment of dismissal. (*Id*. at p. 227) On appeal, the court held Rutherford could state a cause of action "for money had and received" based on the total failure of consideration and it was not necessary to bring a formal action for rescission. (*Id*. at p. 230.) "Where the failure of the consideration is total, 'the law implies a promise on the part of the other to repay what has been received by him under the contract . . . .'

11

[Citation.] Such a promise is implied because the 'defendant cannot in equity and good conscience retain the benefits of the agreement and repudiate its burdens . . . .' [Citation.]" (*Ibid.*)

The trial court did not err in granting Fabinger's motion for summary adjudication.

IV

*Propriety of Money Judgment*

IFIC contends the trial court erred in granting Fabinger a money judgment because the FAC sought only declaratory relief. IFIC cites to authority that the pleadings frame the issues for summary adjudication, but cites to no authority that a money judgment is improper in a declaratory relief action. The law is to the contrary. A court can award monetary relief in a declaratory relief action where there is an actual controversy as to the validity or the amount of plaintiff's claim. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 608; accord *California Bank v. Diamond* (1956) 144 Cal.App.2d 387, 390 ["The complaint having stated a cause of action for declaratory relief, the court had jurisdiction of the entire matter and jurisdiction to render the money judgment here appealed from"].)

The trial court did not err in awarding a money judgment.

V

*Failure to Acknowledge Payment by Codefendant*

In a cursory argument, IFIC contends the judgment "for some unexplainable reason," failed to reflect the settlement between Fabinger and the other surety, RLI. IFIC does not explain why this omission was error or how this alleged error should be remedied. As we explain, we deem this argument forfeited.

A. *Background and the Law*

The fourth cause of action of the FAC sought declaratory relief that *RLI* must pay plaintiffs the surety bond proceeds equal to their earnest money deposits. Shortly after the trial court granted Fabinger's motion for summary adjudication against IFIC, the

12

court ruled that RLI's settlement with Fabinger was a good faith settlement under Code of Civil Procedure section 877.6.

IFIC filed an ex parte application to stay enforcement of the judgment against it and in favor of Fabinger. The trial court granted IFIC's motion to recall and quash Fabinger's writ of execution for two reasons. First, IFIC had belatedly posted an appeal bond. Second, the court found the writs of execution did not accurately reflect credits for amounts Fabinger had recovered from RLI.

Code of Civil Procedure section 877 (section 877) states that when a plaintiff enters into a good faith settlement with a co-obligor subject to a right of contribution for a debt, "it shall reduce the claims against the others . . . in the amount of the consideration paid for it . . . ." (Code Civ. Proc., § 877, subd. (a); *L.C. Rudd & Son, Inc. v. Superior Court* (1997) 52 Cal.App.4th 742, 747.) A defendant seeking offset has the burden of proving the offset. (*Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1077, disapproved on other grounds in *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 382.) "We generally review a ruling granting or denying a section 877 settlement credit under the deferential abuse of discretion standard. [Citation.] To the extent that we must decide whether the trial court's ruling was consistent with statutory requirements, we apply the independent standard of review. [Citation.]" (*Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1044.)

B. *Analysis*

Here, there is no ruling to review. The record before us does not contain *any* attempt by IFIC to obtain an offset against the judgment. It is appellant's burden to provide an adequate record on appeal. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794.) The record shows only that IFIC was successful in recalling and quashing the writs of execution on the judgment, in part because such writs of execution did not accurately reflect credits for payments by RLI to Fabinger. Nothing in the record establishes that these proceedings resulted in resolution of this issue.

13

Nor does IFIC argue on appeal that the judgment should be modified to include an offset pursuant to section 877. Indeed, IFIC's argument mentions neither section 877 nor an offset. Further, IFIC provides no citation to authority in support of its position, instead merely fulminating about Fabinger's greed. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"].) "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as [forfeited]. [Citation.]" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) We do so here.

VI

*Prejudgment Interest Rate*

Finally, IFIC contends the trial court erred in awarding prejudgment interest of ten percent because the addendum provided for an interest rate of only five percent. On this point, we agree.

Under the addendum, if Seller could not fulfill its obligations, Purchaser was "to receive a refund of all monies that Purchaser has paid plus 5% annualized interest from the date of the execution of this Addendum." The judgment called for interest "at the legal rate of 10% per annum" from June 6, 2008.

Civil Code section 3289 provides in part: "(a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation. ¶ (b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

Where the contract provides for an interest rate, that interest rate prevails over the rate set forth in Civil Code section 3289. (*Roodenburg v. Pavestone Co., L.P.* (2009) 171 Cal.App.4th 185, 192 [contract rate of 18% instead of legal rate of 10%].) This rule applies regardless of whether the stipulated interest rate is greater or lesser than the legal

14

rate. (See *Reidy v. Miller* (1927) 85 Cal.App.764, 768 [error to award 7% prejudgment interest where lease agreement stipulated 4%].)

Fabinger contends the contractual interest rate does not apply because IFIC was not a party to the addendum, or the purchase agreement. He relies on *Harm v. Frasher* (1960) 181 Cal.App.2d 405. In *Harm*, two groups, the Harm Interests and the Frasher Estate, entered into separate contracts to sell their controlling interests in a trucking business to Copperstate; each contract was contingent on the sale by the other group. The Frasher Estate delayed the sale and the Harm Interests sued for damages due to the delay and obtained a judgment. (*Id*. at pp. 410-411.) On appeal, defendants contended the trial court erred in awarding prejudgment interest of seven percent instead of five percent, the rate set forth in the sale contract. The appellate court disagreed. "The obvious fallacy of this contention is that the plaintiffs are not suing the party who agreed to pay 5 per cent interest on the purchase price." (*Id*. at p. 418.)

While IFIC was not a party to the addendum, it is a surety, and as such its liability is commensurate with that of its principal, Highlands. (Civ. Code, § 2808.) By the addendum, Highlands contracted with Fabinger to alter its liability in two ways from that set forth in the purchase agreement if Highlands could not fulfill its obligations. First, it agreed to pay interest from the date of the addendum, rather than the date of the breach. Second, it agreed to an interest rate of five percent. IFIC's liability as surety is fixed by this agreement. We have held that a surety was bound by the contractual interest rate, even though it was not a party to that contract. (*Granite Construction Co. v. American Motorists Ins. Co.* (1994) 29 Cal.App.4th 658.) In that case, Granite had not been paid for work in paving streets and brought suit against the surety to recover. Granite's contract provided for an interest rate of 18 percent for any unpaid balance. The surety argued that since the surety bond did not provide an interest rate, Granite was limited to the legal rate of 10 percent. We disagreed, holding that since the bond was to provide recourse for those who furnished labor and materials but were not paid, Granite was

15

entitled to prejudgment interest at the contractual rate of 18 percent.  (*Id*. at p. 671.) Here, the IFIC surety bond was to provide recourse for purchasers who made a deposit but never received what they purchased.  (Bus. & Prof. Code, § 11013.2.)  Under *Granite*, IFIC is liable for only the contractual rate of interest of five percent up to the time of judgment.  (Civ. Code, § 3289, subd. (a); see Code Civ. Proc., § 685.010, subd. (a) [10% interest on unsatisfied money judgment].)

## DISPOSITION

We modify the judgment to provide for prejudgment interest at the rate of five percent.  As modified, the judgment is affirmed.  Fabinger shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


          DUARTE          , J.


We concur:


     NICHOLSON    , Acting P. J.


     MURRAY       , J.